**UNITED STATES of America, Appellee,**

v.

**Larry W. MAYBERRY, Appellant.**

**No. 89–1182.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 13, 1989.

Decided Feb. 22, 1990.

---

Arthur S. Margulis, St. Louis, Mo., for appellant.

Dean R. Hoag, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before BOWMAN, Circuit Judge, HENLEY, Senior Circuit Judge, and BEAM, Circuit Judge.

HENLEY, Senior Circuit Judge.

Defendant-appellant Larry W. Mayberry appeals his conviction for maliciously damaging and destroying by fire a building containing a sawmill, affecting interstate commerce. *See* 18 U.S.C. § 844(i) (Supp. V 1987). Mayberry was convicted on October 14, 1988, after a four-day jury trial.[1] On January 18, 1989 Mayberry was sentenced to five years imprisonment.

Two primary issues are involved in this appeal. First, did the district court properly exercise jurisdiction? Mayberry contends interstate commerce was not affected by the burning of the structure and thus there is no federal jurisdiction under 844(i).[2] Second, was there error in the

---

1. The Honorable Stephen N. Limbaugh, United States District Judge, Eastern and Western Districts of Missouri, presiding.

2. 18 U.S.C. § 844(i) provides in pertinent part:
   (i) Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not more than ten

court's allowing testimony against Mayberry admitted under the coconspirator exception to the hearsay rule? [3] Mayberry also argues in a pro se brief that there was error in the lower court's grant of a severance for Mayberry and his codefendant, Ruble, and that "certain irregularities" were committed at trial which prejudiced his due process rights. We affirm.

In the late evening hours of July 16, or early morning hours of July 17, 1986, a building containing a sawmill located in Lesterville, Missouri, was destroyed by fire. At the time of the fire, the sawmill had not been utilized for the sawing of logs for approximately one month.

Ed Scaggs owned the sawmill at the time of the fire, and was also the owner of Simitar Lumber Company of Bath, Illinois. Scaggs leased the building containing the sawmill and the land upon which it sat from Lindell and Genevieve Miller, from whom he had purchased the sawmill in 1985. Scaggs and Mayberry, the defendant, formed M & S Lumber Company, with Mayberry's role being the logging of adjacent timberland which M & S purchased. Scaggs' responsibility was the actual sawing of the logs into lumber.

Several witnesses testified at trial. Although no one directly observed codefendants Mayberry and Ruble set the fire, there was extensive testimony connecting them to the crime.

Testimony at trial included several eyewitness accounts of Mayberry's presence at the building which housed the sawmill hours prior to the fire. There was also testimony that indications of the pouring of fuel on various equipment within the sawmill were seen by witnesses just after Mayberry and Ruble left the building some hours before the fire began. In addition, there was an eyewitness observation of a vehicle resembling Mayberry's truck leaving the area immediately after flames engulfed the building. There was also testimony that when Mayberry was followed by

Deputy Sheriff Donnie Ivy just minutes after the fire was reported by law enforcement authorities over police radio, Mayberry had pulled off the road and turned off his truck's lights. Finally, Genevieve Miller testified, over Mayberry's objection, that several hours before the fire began she heard Lester Ruble—at the time in Mayberry's truck parked in front of the Millers' home—tell her husband Lindell that the sawmill was going to burn that night.

▪ Mayberry first argues that the building and sawmill within it which burned were neither "used" in, nor "affect[ed]," interstate commerce. For this reason, it is asserted, the district court had no jurisdiction to hear this criminal action.

As indicated, the record reflects that the sawmill had not been in actual operation for about one month, from mid-June to the day of the fire. Apparently timber property which was adjacent to the sawmill had been depleted, and this was the reason that no logging operations had recently occurred. Simply speaking, during this period of time, there were no logs to cut. However, there was also testimony that the mill was operational had logs been available. In fact Ed Scaggs, the owner of Simitar Lumber, testified that if more logs could be obtained, he could again begin operations.

Other testimony was to the effect that the electricity was still turned on at the sawmill at the time of the fire. There was also a lease which remained in effect with Lindell Miller, whereby Simitar leased the building and the land on which the sawmill sat. Furthermore, Ed Scaggs had begun verbal negotiations with Al Boggs, an equipment dealer, to trade his sawmill for a portable sawmill which could be readily moved to other tracts of timber.

In construing 844(i), the Supreme Court has held that Congress intended with this legislation to exercise its full power under

years or fined not more than $120,000, or both....

**3.** Federal Rule of Evidence 801(d)(2)(E) provides that "[a] statement is not hearsay if ...

[t]he statement is offered against a party and is ... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy."

the commerce clause. *See Russell v. United States,* 471 U.S. 858, 859, 105 S.Ct. 2455, 2456, 85 L.Ed.2d 829 (1985). The statute is intended to protect all business property. *See id.* at 862, 105 S.Ct. at 2457. Section 844(i) only requires a de minimis connection between the property involved and interstate commerce. *United States v. Voss,* 787 F.2d 393, 397 (8th Cir.), *cert. denied,* 479 U.S. 888, 107 S.Ct. 286, 93 L.Ed.2d 261 (1986). We have held that this standard is "easily met." *See id.* However, the interstate nexus is not met without a showing that there is indeed some interstate character to the property involved. *See, e.g., United States v. Mennuti,* 639 F.2d 107 (2d Cir.1981) (bombing of private dwellings insufficient to implicate interstate commerce).

Mayberry argues primarily that the absence of logging activity at the sawmill for a period of approximately thirty days is fatal to the government's contention that the building was used in or affected interstate commerce. We disagree.

Numerous circuits, including our own, have held that temporary closure of a previously going commercial enterprise does not defeat the claim that under 844(i) interstate commerce is affected by the burning or bombing of a structure. In *United States v. Shriver,* 838 F.2d 980 (8th Cir. 1988), this court found the fact that a building was closed when it was bombed did not remove it from the ambit of interstate commerce under the statute. Similarly, in *United States v. Hermes,* 847 F.2d 493 (8th Cir.1988) (per curiam), we held the fact that commercial property was not currently occupied did not detract from its interstate character simply due to the absence of a tenant. *See id.* at 496; *see also, e.g., United States v. Shockley,* 741 F.2d 1306, 1307 (11th Cir.1984) (per curiam) (business establishment temporarily closed for repairs does not thereby lose its interstate character).

Although the breadth of interstate commerce under 844(i) is tremendously broad,

so too is its constitutional antecedent, the commerce clause. We find no basis to determine on the facts in this case that the federal courts do not have jurisdiction to entertain criminal arson prosecutions simply because a going business has closed at the time it is destroyed by fire or bombing. The conviction below, therefore, must be affirmed in this regard.

Mayberry next argues that the admission of a statement made by Lester Ruble, overheard and testified to by Genevieve Miller, was inadmissible hearsay: "It's going to burn, Lindell ... You'll get paid for your building. Your mom has lived long enough anyway ... It's going to burn if it takes us all night."[4] The statement was allegedly made by Lester to Lindell Miller as Lester sat in the cab of Mayberry's truck in front of Lindell's home hours prior to the burning of the sawmill. Genevieve overheard the statement as she stood in the front door of the Miller home.

Defense counsel objected to this testimony and was granted a continuing objection. The testimony was admitted by the trial court pursuant to Federal Rule of Evidence 801(d)(2)(E), the coconspirator exception to the hearsay rule.

Numerous cases have laid down the guidelines for determining whether the coconspirator exception applies: it must be determined first, that a conspiracy existed; second, that the defendant and the declarant were members of the conspiracy; and finally, that the declaration was made during the course and in furtherance of the conspiracy. *See, e.g., United States v. Bell,* 573 F.2d 1040, 1043 (8th Cir.1978).

Mayberry makes three arguments attacking the admission of this testimony under the above Rule.

First, Mayberry asserts that the trial court erroneously concluded that a conspiracy existed between Mayberry and declarant Lester Ruble. We have little trouble rejecting this argument.

---

**4.** There was some concern that a fire at the sawmill structure might endanger Miller's aged mother who lived nearby.

In order to meet the criteria of the coconspirator's exception to hearsay, it must be shown that there was a "likelihood" of illicit association between the defendant and the declarant. *See United States v. Kiefer,* 694 F.2d 1109, 1112 (8th Cir.1982). Ample evidence was introduced at trial through which the trial court could determine that codefendants Mayberry and Ruble were involved in a conspiracy at the time of the statement. Included among this evidence were the eyewitness observations of the codefendants leaving the premises and of dripping fuel on machinery within the building shortly thereafter. In addition, there was an eyewitness account that a truck which met the description of Mayberry's truck sped away quickly just after the entire building was engulfed in flames. Furthermore, there was evidence that when Mayberry was followed by a law enforcement officer, he pulled off the road and turned off his lights. This evidence, taken together, could support the district court's determination that there was a "likelihood" that conspiratorial activity was taking place.

When this evidence is combined with the statement itself, which the Supreme Court recently held could be considered in determining whether or not a conspiracy existed, *see Bourjaily v. United States,* 483 U.S. 171, 181, 107 S.Ct. 2775, 2782, 97 L.Ed.2d 144 (1987), it is clear that substantial evidence existed for the district court to determine a conspiracy existed between the codefendants. *Cf. United States v. Cerone,* 830 F.2d 938, 949 (8th Cir.1987) (it is not necessary that solely independent evidence connect defendant to the conspiracy; rather, written notes made by coconspirators and sought to be admitted on the grounds of the coconspirator exception to hearsay may be considered in determining whether a conspiracy exists), *cert. denied,* 486 U.S. 1006, 108 S.Ct. 1730, 100 L.Ed.2d 194 (1988).

Next, Mayberry argues that assuming the trial court did not err in concluding a conspiracy existed, it erred in determining that the declaration was made "in furtherance of" the conspiracy.

The question of the admissibility of such statements depending on whether they are "in furtherance" of a conspiracy has been construed broadly in favor of the prosecution. *See, e.g., United States v. Bentley,* 706 F.2d 1498, 1506 (8th Cir.1983), *cert. denied,* 464 U.S. 830, 104 S.Ct. 107, 78 L.Ed.2d 110, *cert. denied,* 467 U.S. 1209, 104 S.Ct. 2397, 81 L.Ed.2d 354 (1984). However, this circuit has also held that "the statements must somehow advance the objectives of the conspiracy, not merely inform the listener of the declarant's activities." *United States v. Snider,* 720 F.2d 985, 992 (8th Cir.1983), *cert. denied,* 465 U.S. 1107, 104 S.Ct. 1613, 80 L.Ed.2d 142 (1984). Casual comments are insufficient to bring the statements within the requirements. *See United States v. Green,* 600 F.2d 154, 158 (8th Cir.1979); *Snider,* 720 F.2d at 992.

In this line of analysis, we consider the nature of the statement, as well as the time and circumstances in which it was made. *See United States v. Lewis,* 759 F.2d 1316, 1340 (8th Cir.), *cert. denied,* 474 U.S. 994, 106 S.Ct. 406, 88 L.Ed.2d 357 (1985). This court has found explanatory statements which inform others of the activities of an illicit association are made in furtherance of the conspiracy. *See id.*

We reverse only if the district court's determination is clearly erroneous. *See United States v. Eisenberg,* 807 F.2d 1446, 1453 (8th Cir.1986). We find no such error here.

Given the nature of the statement, which we believe is anything but casual, coupled with its proximity in time to the actual burning of the building, we could quite easily find the "in furtherance" requirement satisfied if this were the ordinary case. However, usually statements made "in furtherance" are made to other conspirators. This is not the case here.

Although the comments which Ruble made to Lindell may have been made to one *outside* the conspiracy, we do not believe that should necessarily bar the government from showing that such comments were "in furtherance" of the conspiracy. *See United States v. Beech–Nut*

*Nutrition Corp.,* 871 F.2d 1181, 1199 (2d Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 324, 107 L.Ed.2d 314 (1989) (admission of statement to one not a member of conspiracy for the purpose of reassuring and encouraging him not to reveal incriminating information not clearly erroneous). We think these comments could be construed as seeking assistance or cooperation, particularly with regard to the defendant's clear interest in avoiding detection by law enforcement authorities. We also think the statement "[y]ou'll get paid for your building" could be taken to indicate the defendant hoped Miller would remain silent about the fact that the building was going to burn, since Lindell would get paid for his loss. Although this may not be the only way to interpret the comments, it was not clear error for the district court to find these comments made in furtherance of the conspiracy.

Finally, Mayberry argues that the Genevieve Miller statement was admitted in error because these statements had not been revealed to defense counsel through discovery under Federal Rule of Criminal Procedure 16.[5]

There is no merit to Mayberry's argument here. The language of the rule applies only to statements made by the *defendant.* "The purpose of the rule is to enable defense counsel to prepare adequately for government efforts to incriminate the defendant through *his own words,* often a particularly damning form of evidence...." 8 Moore's Federal Practice ¶ 16.04[1], at 16–52 to 16–53 (2d ed. 1989) (emphasis added). These statements were made by Genevieve Miller, a government witness. There was therefore no obligation under this rule to provide information about this statement to the defense. Moreover, the error, if any, was harmless. A transcript of Genevieve Miller's grand jury testimony had been furnished to defense counsel some four months before trial.

**5.** Rule 16(a)(1)(A) provides in pertinent part that "[u]pon request of a defendant the government shall permit the defendant to inspect and copy or photograph: any relevant written or

In a pro se brief, Mayberry makes three arguments, all of which are without merit.

Mayberry first argues that the lower court abused its discretion in granting separate trials for Mayberry and his codefendant. From the record on appeal, it is clear that defendant on June 6, 1988 moved for a severance of his and codefendant's trial. On August 26, 1988 such motion was granted by the magistrate.[6] Later, on September 30, 1988, a motion by Mayberry for a severance was denied by the district court as moot.

We see no substantive basis for Mayberry's complaint here. He may not move for a severance, have his motion granted, and then complain that the trial court has abused its discretion because it granted his motion.

Although Mayberry makes other arguments, we find them all without substance. Thus, for the reasons set out above, we affirm the judgment of the district court.

recorded statements made by the defendant...."

**6.** The Honorable David D. Noce, United States Magistrate for the Eastern District of Missouri.