**UNITED STATES of America, Appellee,**

v.

**Jeffrey D. LYON, Appellant.**

**No. 91–2171.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 11, 1991.

Decided March 18, 1992.

Rehearing Denied May 7, 1992.

Zygmunt Jarczyk, Kansas City, Kan., argued (Zygmunt Jarczyk and James D. Scherzer, on the brief), for appellant.

Peter Martin Ossorio, Kansas City, Mo., argued (Jean Paul Bradshaw II and Peter M. Ossorio, on the brief), for appellee.

Before McMILLIAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Jeffrey D. Lyon appeals both his sentence and his conviction of conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(b)(1)(C) and 846 (1988) and distribution of cocaine in violation of 21 U.S.C. §§ 841(a)(1) (1988) and (b)(1)(C). On appeal, he argues that: (1) the district court erred in admitting the hearsay statements of a co-conspirator; (2) the evidence was insufficient to support the guilty verdict; (3) the district court erred in admitting evidence of prior acts; (4) one of the jury instructions improperly permitted jurors to believe that the government did not have the burden of proving Lyon's intent; and (5) the district court erred in calculating Lyon's sentence in that it improperly imposed a two-level increase for obstructing justice, failed to give a two-level reduction for acceptance of responsibility, and abused its discretion by granting a downward departure of only one month. We affirm the judgment of the district court.[1]

The government charged Lyon and four others[2] with participating in a conspiracy to distribute cocaine "[f]rom on or about August 24, 1988 until on or about Nov. 18, 1988." Lyon and two of his co-defendants were also charged with knowingly and intentionally distributing cocaine on or about November 18, 1988.

Undercover detective Jon Ciarletta, of the Independence, Missouri, police department, purchased cocaine from co-defendant Jeffery McCuiston on August 24 and 26, 1988. Co-defendant Mark McLain was present at both sales. Later that month, Ciarletta purchased cocaine from McLain's brother, Randy, and in September, purchased cocaine from Randy and a third McLain brother, Tim.

On November 18, 1988, McCuiston, who did not know that Ciarletta was an officer, called Ciarletta and told him that he had arranged a one-ounce cocaine transaction, that McCuiston's main drug supplier would be present at the sale, and that Ciarletta could meet him. That same day, McCuiston and Ciarletta met Mark McLain, Randy McLain, and appellant Lyon at the McLain brothers' house. Mark McLain, responding to an inquiry from McCuiston about setting up a one-ounce transaction, had contacted Lyon and arranged for him to be there.

Following a brief conversation in the McLains' living room, Lyon and Mark McLain began walking toward the garage. McCuiston and Ciarletta followed. In the garage, McLain produced a baggie containing white powder. Ciarletta weighed the bag on a triple beam scale, asked McLain if it was any good, and asked about the price. McLain and McCuiston looked at Lyon and no one spoke for a couple of seconds. Lyon then nodded his head and, after a pause, McCuiston said the price was $1,300.

Wondering if Lyon was the "main supplier" whom McCuiston had mentioned during the telephone conversation, Ciarletta asked

---

1. The Honorable Elmo B. Hunter, Senior United States District Judge for the Western District of Missouri.

2. All four of Lyon's co-defendants pled guilty.

Lyon who he was. Lyon, who was standing with a baseball bat in his hand, said that he was a friend. Ciarletta then said it looked to him like the powder had been "cut" with an adulterant. Lyon stated that the powder was good like it was supposed to be and that if Ciarletta did not like it, he did not have to buy it.

Lyon suggested that Ciarletta try some of the cocaine. Ciarletta did not do so and simply handed over the $1,300 to McLain. Lyon then ordered Ciarletta to try some of the powder. Ciarletta refused and walked out of the garage with McLain. Standing on the drive, Ciarletta asked McLain, "[W]ho was that guy and what was his problem ...?" McLain shrugged his shoulders, and Ciarletta pressed: "[I]s he the man or what's the deal?" McLain then nodded his head, said "yeah" and explained that Lyon was "nervous" because he did not know Ciarletta and that things would be "cool" next time. Ciarletta then departed.

Later that same day, Ciarletta spoke on the telephone with McCuiston. Still trying to determine Lyon's role, Ciarletta asked McCuiston if Lyon was the main supplier whom McCuiston had earlier mentioned. McCuiston confirmed that he was and stated that both he and Mark McLain purchased cocaine from Lyon. McCuiston further stated that Lyon used Mark McLain as a "shield" against prosecution, relying on him to do "all the dirty work" because Lyon refused to handle drugs or money in front of anybody he did not know.

The jury convicted Lyon of both counts on which he was charged. For sentencing purposes, the government and Lyon stipulated that the amount of cocaine constituting Lyon's relevant offense conduct was at least 500 grams of cocaine but less than two kilograms. The district court sentenced him to 120 months in prison followed by a three-year term of supervised release. The court also imposed a $12,500 fine and a $100 special assessment. This appeal followed.

I.

We first address an evidentiary issue before discussing sufficiency of the evidence. Lyon argues that the district court erred by allowing Ciarletta to testify as to McCuiston's out-of-court statements. Lyon asserts that these statements, in which McCuiston identified him as the main supplier, are inadmissible under the co-conspirator exception to the hearsay doctrine because: (1) the government had not established the existence of a conspiracy at the time of Ciarletta's testimony, and (2) Ciarletta's conversation with McCuiston occurred after the conspiracy, according to the dates in the indictment, had ended.

■ Under Fed.R.Evid. 801(d)(2)(E), statements of a co-conspirator are admissible if made "during the course and in furtherance of the conspiracy." In *United States v. Mayberry*, 896 F.2d 1117 (8th Cir.1990), we stated that the hearsay exception applies if the evidence shows there was a " 'likelihood' of illicit association between the defendant and the declarant." *Id.* at 1121 (citing *United States v. Kiefer*, 694 F.2d 1109, 1112 (8th Cir.1982). Moreover, the court may consider the challenged statements themselves in determining whether or not a conspiracy existed. *Mayberry*, 896 F.2d at 1121 (citing *Bourjaily v. United States*, 483 U.S. 171, 181, 107 S.Ct. 2775, 2781, 97 L.Ed.2d 144 (1987)).

■ Mark McLain, who testified before Ciarletta, stated that he had known Lyon about five years, that he had purchased cocaine from Lyon on a number of occasions, that he had told Ciarletta as they stood on the McLains' driveway that Lyon was the supplier, and that he gave Lyon the money paid by Ciarletta.

Ciarletta recounted his telephone conversation with McCuiston in which McCuiston stated that Lyon was his main cocaine supplier, that he and Mark McLain had both purchased cocaine from Lyon, and that Lyon used Mark McLain as a "shield" against prosecution.

The district court did not err in finding that the evidence showed a "likelihood" of illicit association between Lyon and McCuiston.

■ Lyon's contention that McCuiston's statements are inadmissible because they did not occur "during the course" of the period alleged in the indictment is equally unpersuasive. Lyon's argument rests on the fact that although the challenged conversation took place on November 18, it occurred *after* the transaction at the McLain home.

■ The indictment states that the conspiracy continued "from on or about August 24, 1988 until *on or about* November 18, 1988." (emphasis added). Approximate dates in an indictment are not controlling. *United States v. Crocker*, 788 F.2d 802, 805 (1st Cir.1986). Moreover, a conspiracy does not necessarily expire after the last act alleged in the indictment; it expires after the last overt act, whether charged or not. *United States v. Lewis*, 759 F.2d 1316, 1347 (8th Cir.), *cert. denied*, 474 U.S. 994, 106 S.Ct. 406, 88 L.Ed.2d 357 (1985).

Thus, we see no reason that McCuiston's statements should be barred on the ground that they were not made "in the course" of the conspiracy. The dates in the indictment were approximate, and McCuiston's statements to Ciarletta, which apparently were aimed at keeping Ciarletta as a customer, indicated the continued operation of the conspiracy. *See Lewis*, 759 F.2d at 1347 (continuity of conspiracy is presumed in absence of affirmative showing of termination).

The district court did not err in admitting McCuiston's hearsay statements.

## II.

■ Lyon challenges the sufficiency of the evidence to sustain the conspiracy conviction.[3] He contends that the evidence does not tie him to any of the cocaine deals other than the November 18 sale, and that his mere presence during that sale is not sufficient to establish him as a co-conspirator.

■ In reviewing the sufficiency of the evidence to support a guilty verdict, we look at the evidence in the light most favorable to the verdict, accepting as established all reasonable inferences tending to support the verdict. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. LaGuardia*, 774 F.2d 317, 319 (8th Cir.1985); *United States v. Lee*, 743 F.2d 1240, 1250 (8th Cir.1984). We then uphold the conviction if the evidence is "sufficient to convince a jury beyond a reasonable doubt that the defendant is guilty." *LaGuardia*, 774 F.2d at 319.

To convict Lyon of conspiracy, the government had to prove that he entered into an agreement with at least one other person and that the agreement's objective was to violate the law. *United States v. Foote*, 898 F.2d 659, 663 (8th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 112, 112 L.Ed.2d 81 (1990).

Although Lyon was not present at the earlier drug transactions involving the McLain brothers and McCuiston, the government presented evidence sufficient to convince a jury beyond a reasonable doubt that Lyon participated in the conspiracy. McLain testified that over a five-year period, he had purchased cocaine from Lyon in amounts ranging from one-quarter gram to 28 grams (one ounce) on more than 10 but fewer than 50 to 100 occasions. He further testified that he had contacted Lyon on behalf of McCuiston to arrange the November 18 transaction.

When Ciarletta asked Mark McLain "[I]s he the man or what's the deal," McLain nodded his head and said, "yeah." McLain also explained to Ciarletta that Lyon was nervous because he was not familiar with Ciarletta and that "[i]t'll be cool next time." Although Ciarletta did not see what McLain did with the $1,300 in proceeds, McLain testified that he handed it to Lyon.

Lyon's actions during the November 18 transaction are significant. Ciarletta testi-

---

**3.** We do not read Lyon's brief as challenging the sufficiency of the evidence to sustain the conviction on the distribution count. In fact, he states that the view of the evidence most favorable to

the verdict "indicates that appellant may have been the supplier in this particular [November 18] transaction...."

fied that McCuiston waited for a "nod" from Lyon before telling him the price of the cocaine and that when he, Ciarletta, questioned the purity of the cocaine, Lyon stated that it was "good" and "just like it was supposed to be." Lyon also told Ciarletta that if he did not like it, he did not have to buy it. He first suggested, then ordered, Ciarletta to try the cocaine, which Ciarletta refused to do.

Looking at this evidence in the light most favorable to the verdict and granting the verdict the benefit of all reasonable inferences, we conclude that a reasonable jury could find beyond a reasonable doubt that Lyon had engaged in a conspiracy to distribute cocaine.

### III.

■ Lyon next argues that the district court erred by permitting McLain to testify that he had purchased cocaine from Lyon on more than 10 but fewer than 50 to 100 occasions. Lyon contends that these statements were "vague," "unsubstantiated," and "incredible," and that the district court wrongfully admitted them under Fed. R.Evid. 404(b).

■ Under Rule 404(b), the district court has broad discretion and we will not overturn its ruling unless the evidence in question clearly did not bear upon any of the issues involved. *United States v. Marin–Cifuentes*, 866 F.2d 988, 996 (8th Cir.).

Rule 404(b) prohibits the admission of evidence of prior bad acts if they "tend[ ] only to prove the defendant's criminal disposition." *United States v. Crook*, 936 F.2d 1012, 1015 (8th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 974, 117 L.Ed.2d 138 (1992). Such evidence is otherwise admissible if relevant to a material issue, if the prior acts are similar in kind

and reasonably close in time to the crime charged, if the evidence is sufficient to support a jury finding that the defendant committed the prior acts, and if the potential unfair prejudice does not substantially outweigh the probative value of the evidence. *Id.*

We conclude that the district court did not abuse its discretion in admitting the testimony regarding Lyon's prior drug sales. Such evidence was more probative than prejudicial, as it bore strongly on the issue of Lyon's intent, a material element of the conspiracy charge. Moreover, the prior bad acts were similar in kind and reasonably close in time (within a few years) to the crime charged. Finally, a reasonable jury could find by a preponderance of the evidence, *see United States v. Mothershed,* 859 F.2d 585, 588 n. 2 (8th Cir.1988), that Lyon committed the prior acts.

### IV.

■ Lyon next contends that because he did not testify, the district court's instruction on intent had the effect of erroneously placing on him the burden of proof on that issue.[4] He asserts that the instruction should have been modified to make clear that it was referring to acts done or statements made in connection with the offense, and that the jury should draw no inference from his failure to testify.

■ The district court has broad discretion in choosing the form and language of the instructions, *United States v. Hiland,* 909 F.2d 1114, 1128 (8th Cir.1990), and we must consider the instructions as a whole. *Id.*

Here, the district court expressly required the government to carry its burden

---

4. The instruction stated:

Intent ordinarily may not be proved directly, because there is no way of fathoming or scrutinizing the operations of the human mind. But you may infer a defendant's intent from surrounding circumstances. You may consider any statements made or acts done, or omitted, by the defendant, and all other facts and circumstances in evidence which indicate his state of mind.

You may consider it reasonable to draw the inference and, you may find that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted. As I have said, it is entirely up to you to decide what facts to find from the evidence.

of proof, by giving instructions on the essential elements of the conspiracy and on the government's burden to establish beyond a reasonable doubt Lyon's knowledge of and voluntary entry into the conspiracy. The court also instructed the jury that "merely being present" at the scene of an event does not prove that a person has joined a conspiracy, and that proof of a simple buyer-seller relationship is not enough to establish a conspiracy. Finally, the court instructed that the law does not compel a criminal defendant to testify and that no inference of any kind may be drawn from the defendant's failure to do so.

██ Looking at the instructions as a whole, we conclude that the district court did not err in giving the instruction on intent.[5]

### V.

██ Lyon next attacks his sentence, asserting that the district court erred by imposing a two-level increase for obstruction of justice and by denying a two-level decrease for acceptance of responsibility.

Lyon argues that the court erred in imposing the two-level increase because United States Sentencing Guideline § 3C1.1 (1990), which allows enhancements for obstruction of justice, is not intended to apply to the mere avoidance of or flight from arrest. *See* U.S.S.G. § 3C1.1 comment. (n. 4(d)).

The sentencing transcript reveals that Lyon did far more than simply avoiding or fleeing arrest, however. He left the jurisdiction and remained a fugitive for about a year. During that time he used the driver's license he had stolen from his brother and obtained work under his brother's name. He also violated the conditions of his probation imposed by the State of Missouri. At the sentencing hearing, he

agreed that his goal had been to "remain as far away as [he] could so that [he] would not be brought in or involved or in any way forced to cooperate or testify against [his co-defendants]."

██ The district court has broad discretion to apply section 3C1.1 to a wide range of conduct. *United States v. Duke*, 935 F.2d 161, 162 (8th Cir.1991). Finding that Lyon's actions were "calculated to mislead or deceive authorities," the district court imposed the increase, and there is no reason to conclude that it erred in so doing.

██ In rejecting Lyon's argument that he had accepted responsibility, the district court again cited Lyon's year-long fugitive status. The district court is entitled to "great deference" in its determination, *United States v. Keene*, 915 F.2d 1164, 1170 (8th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 1001, 112 L.Ed.2d 1084 (1991), and we see no reason to disturb its finding that Lyon did not merit a two-level decrease under U.S.S.G. § 3E1.1.

Finally, Lyon complains that the district court abused its discretion by departing downward from the guideline range by only one month (from 121 months to 120) pursuant to the prosecution's motion under U.S.S.G. § 5K1.1.[6] We first observe that Lyon misreads the record. The government asked the court to consider the parties' sentencing agreement as a section 5K1.1 motion. The court did so, and thereby reduced Lyon's sentencing range from 188 to 235 months to 97 to 121 months. The court, again relying on the government's motion, sentenced Lyon to one month less than the maximum in that range.

We have repeatedly stated that a defendant's challenge to a district court's decision to depart downward or to the degree of its departure is not reviewable on appeal. *United States v. Sharp*, 931 F.2d

---

5. Lyon also argues that the district court failed to give an instruction on specific intent. Lyon did not request such an instruction and we see no plain error in the district court's failure to give one.

6. Lyon also appears to make a separate argument that the district court did not adequately state its reasons for imposing the one-month departure. *See* U.S.S.G. § 5K1.1, comment. (backg'd). We reject this argument, as the district stated at length its reasons for imposing the 120–month sentence.

1310, 1311 (8th Cir.1991); *United States v. Left Hand Bull*, 901 F.2d 647, 650 (8th Cir.1990).

We affirm the judgment of the district court.[7]

See also 778 S.W.2d 326.

---

**7.** Lyon also contends that the district court erred by imposing a three- to five-year period of supervised release rather than the three years he contends is the statutory maximum. In fact, the district court sentenced him to three years of supervised release, the maximum allowed in his guideline range.