**UNITED STATES of America, Appellee,**

v.

**Tamara Jo SMITH, Appellant.**

No. 94–3332.

United States Court of Appeals, Eighth Circuit.

Submitted June 13, 1995.

Decided Aug. 10, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 20, 1995.

---

Before BEAM, Circuit Judge, BRIGHT, Senior Circuit Judge, and MURPHY, Circuit Judge.

DIANA E. MURPHY, Circuit Judge.

Tamara Smith appeals from judgments of conviction for conspiracy to commit fraud using access devices[1] and aiding and abetting with intent to commit fraud and on revocation of probation. She claims the district court[2] erred in denying her motion for a new trial and attacks the admission of certain evidence, the performance of her trial attorney, and her sentences. We affirm.

I.

In early February 1991 the United States Secret Service became aware that department stores in the Twin Cities were being victimized by a fraud scheme involving unauthorized use of store charge account cards. An individual claiming to be the owner of a charge card would call a store to request an address change and authorization of an additional user. The caller would have sufficient personal and account information to cause the changes to be made over the telephone. Someone identifying him or herself as the individual added to the card would then pick up a temporary charge card and make expensive purchases.

On February 7 security guards at Dayton's department store apprehended Frank Lewis while he was attempting to use a temporary card issued to Michael Williams; a woman posing as the owner of the card had telephoned the store earlier that day and added Williams to the card. Lewis admitted his involvement and explained how the fraud scheme operated during an interview with Secret Service agents. Lewis and his roommate, Marshall Jennings, would periodically receive telephone calls from a woman who called herself Vicki (later identified as Tamara Smith) who provided an account number and list of items to purchase. After Lewis or Jennings used the temporary charge card to purchase the items she speci-

Deborah Kay Ellis, St. Paul, MN, argued (Kate Latimer, St. Paul, MN, on the brief), for appellant.

Michael William Ward, Asst. U.S. Atty., argued, for appellee.

---

1. An "access device" includes "any card, plate, code, [or] account number" that can be used to obtain money or goods. 18 U.S.C. § 1029(e)(1).

2. The Honorable Robert G. Renner, Senior United States District Judge for the District of Minnesota.

fied, Smith would send someone to their apartment to pick up the goods.

Smith and Ruth Jones, one of the individuals who picked up goods from Lewis and Jennings, were arrested on February 8, 1991, and interviewed by Secret Service agents. Smith, who was on probation for several offenses, admitted her involvement with the scheme and indicated that she had recruited a total of about six "mules," including Lewis, Jennings, and Jones, and had directed them to use the fraudulently obtained charge cards. She claimed that a man named Sam had provided her with account information, and that she was storing goods for him at the house of a friend. She also offered to assist the St. Paul Police Department in a murder investigation involving her former boyfriend, Kenneth Jones.

Smith was driven home after the interview and told to stay in contact with the agents. She fled Minnesota a few days later, after retrieving fraudulently obtained goods from storage and selling them to finance her flight. She had given investigators a false address, and her family maintained that it did not know where she was or how to reach her.

Smith was indicted along with Lewis, Jennings, and Ruth Jones; the others pled guilty in 1991. In December 1993 investigators located Smith in Los Angeles, where she was living with her cousin, Joseph Lee. Federal Bureau of Investigation agents contacted Lee on January 13, 1994, and he agreed to cooperate in apprehending Smith. Later that day he informed Special Agent Michael Mench that Smith was in his home. Mench and another agent went to the house, were admitted by Lee, and arrested Smith when she opened her bedroom door in response to their knock.

Several days later Mench called Lee to thank him for his cooperation. When Lee mentioned that he was packing Smith's belongings to send to her mother, Mench recalled that there had been several pieces of identification on her night stand. He asked if he could have them, and Lee agreed.

Mench and another agent returned to the house to pick them up, and Lee gave them 10 pieces of identification, including identification and charge cards in several names.[3]

Smith was returned to Minnesota, and counsel was appointed for her. Soon Smith began to complain to the court, the public defender's office and the United States Attorney's office about him and to request substitute counsel. When she renewed her request on the day of trial, the district court questioned her. Smith stated that there were "some issues" on which she and her attorney did not "see eye to eye." The court gave her the option of proceeding pro se or continuing with her counsel; she chose the latter option.

At trial Lewis and Ruth Jones testified about Smith's role in the fraud ring. Smith presented a coercion defense, asserting that Kenneth Jones had forced her to participate. Against the advice of her attorney, Smith testified on her own behalf and was cross-examined at length about her criminal history, including convictions for charge card fraud and conspiracy to commit perjury. She was convicted on both counts in the indictment.

After the return of the verdict the court granted Smith's renewed motion for substitution of counsel and held an evidentiary hearing on her request for a new trial, at which Smith was represented by new counsel. The court declined to hear evidence on whether the seizure of the identification cards had been lawful because that issue had already been developed earlier, but it did permit a new affidavit from Joseph Lee to be entered in the record. Lee stated in the affidavit that the items he gave to Special Agent Mench had been found in Smith's purse.

Considerable testimony was received on the relationship of Smith and her trial attorney. Smith testified that he had impeded her attempts to obtain a favorable plea agreement by cooperating in the Kenneth Jones murder investigation. She further tes-

---

**3.** The Assistant United States Attorney in charge of the case learned of the seized items from Special Agent Mench approximately two weeks before trial and informed the defense that he intended to introduce them at trial. Smith moved to suppress. After a hearing at which Mench testified, the court denied her motion.

tified that he refused to draft legal documents, discuss legal strategy, take her calls or interview witnesses who could support her coercion defense, and that they had stopped communicating before trial. Her trial attorney testified that the government had told him that it was not interested in obtaining Smith's cooperation. While the relationship with his client had been contentious at times, communication had never completely broken down. According to him, Smith had her own opinion on the law applicable to her case and made frequent disruptive calls to his office (up to seven or eight times a day). He stated that he had spoken with potential witnesses she had mentioned (with the exception of Kenneth Jones, whom his investigator unsuccessfully attempted to contact), but had decided not to call them at trial because their testimony would have been detrimental.

The district court denied the new trial motion after finding that counsel had not prevented Smith from cooperating, that he had reasonably investigated potential witnesses, and that communication, although strained, had not broken down completely. The court concluded that counsel had reasonably responded to Smith's requests and concerns, that her behavior had created many of the communication problems, and that conflicts would have arisen with any appointed attorney. Counsel's representation had been objectively reasonable, and he had provided effective assistance of counsel.

Several points are raised regarding sentencing. Smith had been on probation for three 1986 fraud convictions, and the probation office had requested that her probation be revoked because of her flight to California. The court therefore held a consolidated probation revocation and sentencing hearing. It revoked probation after finding that Smith had violated its terms, and imposed a sentence of 18 months imprisonment on the probation violation. The court also heard evidence concerning the loss Smith caused the victim department stores. Smith maintained that she was responsible for less than $70,000 under § 2F1.1 of the United States Sentencing Guidelines, but the court found that she was responsible for a loss of between $70,000 and $120,000. It also found

that Smith had been the manager or supervisor of a criminal conspiracy with five or more participants under guidelines § 3B1.1, and that she had obstructed justice by fleeing. The court imposed a sentence of 78 months imprisonment for the new convictions, to run consecutively to the time imposed for the probation violation.

## II.

Smith argues that she is entitled to a new trial because the district court failed to hold a pre-trial hearing on whether she was entitled to substitute counsel, her attorney provided constitutionally ineffective assistance, and the identification cards admitted at trial were illegally seized from her bedroom.

■■■ An indigent defendant must show justifiable dissatisfaction with her appointed attorney to warrant substitute counsel. This burden can be met by showing the existence of a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the defendant and attorney. *United States v. Sayers*, 919 F.2d 1321, 1323 (8th Cir.1990). Whether to grant a request for substitute counsel is within the discretion of the district court. *United States v. Swinney*, 970 F.2d 494, 499 (8th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 632, 121 L.Ed.2d 563 (1992).

■■■ We find no abuse of discretion arising from the timing of the hearing or from the court's refusal to grant Smith a new trial with substitute counsel. Smith's pre-trial motion for substitute counsel was denied by United States Magistrate Judge J. Earl Cudd. The issue was then reopened on the morning of trial when the district court questioned Smith. She stated that she and her lawyer did not "see eye to eye" on "some issues." Contrary to her present assertions, Smith did not make a sufficient showing, either before or after trial, that substitute counsel needed to be appointed. She did not show an irreconcilable conflict, conflict of interest, or complete breakdown in communication. A full hearing was held after trial when there was a developed record. The district court had the opportunity to judge the credibility of the testimony, and the record sup-

ports its findings that the communication between Smith and her lawyer did not break down completely, that Smith caused many of the difficulties, and that differences would have arisen with any appointed attorney.

■ Smith contends that her counsel provided inadequate assistance because he failed to investigate witnesses and to ask each question she suggested. A claim of ineffective assistance of counsel should normally not be part of a direct appeal but should be raised in collateral proceedings under 28 U.S.C. § 2255 because such a claim usually cannot be advanced without development of the record. *United States v. Gallegos–Torres,* 841 F.2d 240 (8th Cir.1988). Here the district court heard evidence on and considered the performance of Smith's attorney in resolving her new trial motion, and the record is adequate to permit consideration of the claim as part of our review.

■ The record developed at trial and at the post-trial hearing shows that the performance of Smith's trial counsel was objectively reasonable. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). He interviewed witnesses identified by Smith, discovered their testimony would be detrimental, and rationally declined to call them to testify. His decisions not to call Kenneth Jones and not to ask every cross-examination question she suggested were reasonable trial strategy. Smith has not shown the district court erred by not appointing new trial counsel or granting her a new trial.

Smith also argues that the district court erred in denying her a new trial because the affidavit from Joseph Lee offered after trial demonstrates that evidence was seized illegally from her bedroom. This evidence was not produced until after her conviction and is not of great value in any event. Lee's affidavit is cursory, and states only that he retrieved the identification cards from Smith's purse to give to Special Agent Mench. The affidavit does not state anything about where the cards were at the time of arrest, when they were put in the purse, or by whom.

Whether the cards were in plain view at the time of arrest and subsequently placed in Smith's purse as Lee gathered her belongings is not resolved by the affidavit.

■ A defendant seeking a new trial based on newly discovered evidence must show that the evidence is in fact new, that her failure to discover it earlier was not due to lack of diligence, and that the evidence is such that at a new trial it would likely produce a different outcome. *United States v. LaFuente,* 991 F.2d 1406, 1408 (8th Cir.1993). Smith has failed to make such a showing. There is nothing in the record to indicate that the information in the affidavit was unavailable before or during trial or that something other than lack of diligence prevented her from producing it. Because of the strength of the other evidence, it is not likely that a new trial would lead to a different result.

### III.

Smith raises several arguments about the sentences imposed. She contends that the probation revocation was invalid because the original sentence was illegal, and that the court erred in its application of the United States Sentencing Guidelines.[4]

■ In November 1986 Smith was convicted of numerous fraud counts in the Northern District of Illinois. She received eight years incarceration on 14 counts of bank fraud, five years incarceration on other counts, and five years probation on three additional counts. Probation was to begin after she completed the concurrent sentences of imprisonment. In 1989 the sentencing court reduced the eight year terms to four years, but did not alter the other sentences. Probation commenced in 1991, at which time Smith's supervision was transferred to the District of Minnesota.

Smith claims that the sentence of probation was illegal because it was imposed together with a term of imprisonment, in violation of 18 U.S.C. § 3561(a)(3). That statute, which became effective on November 1, 1987, provides that a defendant may be sentenced

---

4. Smith also asserts that the court failed to make factual findings at sentencing. A review of the sentencing transcript reveals that this argument is without merit.

to a term of probation "unless [she] is sentenced at the same time to a term of imprisonment for the same or a different offense." Smith concedes that § 3561 was not operative at the time she was originally sentenced, but argues that it should nonetheless be applied now because of the modification to her sentence in 1989.

Smith's argument is misplaced. Her 1989 sentence reduction affected only those counts for which she had previously received sentences of eight years incarceration. As she concedes, the three counts of probation were not altered. The reduction in sentence merely adjusted the date Smith would begin serving probation. It did not affect the date she was sentenced to probation or trigger the application of § 3561.

Smith contests the district court's determination of her adjusted offense level under the Sentencing Guidelines, arguing that it erred in determining that several upward adjustments applied. She argues that the court erred in finding a $70,000 to $120,000 loss to the victimized stores, a figure it reached by totaling the unauthorized charges. She argues that she is responsible for the wholesale value of the merchandise, minus the value of merchandise recovered from Frank Lewis, Marshall Jennings, and Ruth Jones.

■ The district court's calculation of loss is reviewed for clear error. *United States v. Earles,* 955 F.2d 1175, 1180 (8th Cir.1992). Under Sentencing Guidelines § 2F1.1, a defendant is responsible for the total value of the loss she attempted to inflict rather than the actual loss. *United States v. Prendergast,* 979 F.2d 1289, 1292 (8th Cir. 1992); *United States v. Saunders,* 957 F.2d 1488, 1494 (8th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 256, 121 L.Ed.2d 187 (1992). The dollar value of the unauthorized charge card purchases accurately represents the loss that Smith attempted to inflict on the stores, and the district court did not err in using that measure to calculate loss under § 2F1.1.

■ Smith contends that the district court's finding that she was a manager or supervisor of a conspiracy involving five or more individuals under § 3B1.1 is unsupported by the record, which indicates that only four people (Smith, Lewis, Jennings, and Ruth Jones) participated in the scheme. We review the district court's finding about a defendant's role for clear error, *United States v. Briggs,* 969 F.2d 689, 692 (8th Cir. 1992), and on the record before us we find none. Smith indicated during questioning that she had recruited about six "mules," tr. at 474, and she testified at trial that Kenneth Jones had participated in the scheme. In addition, Frank Lewis testified that a man named Lunden Bell, who was arrested in connection with the scheme but not charged, served as lookout for Marshall Jennings before Lewis moved to Minnesota. These facts are sufficient to support the district court's finding that the conspiracy involved five or more participants.

■ Smith also objects to the district court's finding that she obstructed justice by fleeing after being questioned, contending that the obstruction enhancement under § 3C1.1 does not apply to "mere flight to avoid arrest." *United States v. Stroud,* 893 F.2d 504, 507 (2nd Cir.1990); U.S.S.G. § 3C1.1, application note 4. A district court has discretion to apply § 3C1.1 to a broad range of conduct. *United States v. Lyon,* 959 F.2d 701, 707 (8th Cir.1992); *United States v. Duke,* 935 F.2d 161, 162 (8th Cir. 1991). The court did not abuse that discretion under the circumstances presented here. Smith answered questions and offered to cooperate during the post-arrest interview with Secret Service agents, but gave a false address, retrieved and sold fraud proceeds, and fled. She adopted aliases and was located through police investigation almost three years later. These facts contradict Smith's contention that she merely "was not in the state when agents began looking for her." Appellant's br. at 48. They indicate that she actively impeded arrest and resolution of her case. This was sufficient to make out obstruction.

Accordingly, the judgments are affirmed.