# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

————————

No. 98-1817

————————

United States of America,     *
          *
      Appellee,     *
          *    Appeal from the United States
    v.     *    District Court for the
          *    District of Minnesota.
Macon LeJoseph Billingsley,     *
          *
      Appellant.     *

————————

Submitted:  October 19, 1998
Filed:  November 19, 1998

————————

Before HANSEN, LAY, and MURPHY, Circuit Judges.

————————

LAY, Circuit Judge.


Macon LeJoseph Billingsley was tried and convicted of one count of possession of cocaine base with intent to distribute and one count of possession of heroin with intent to distribute in violation of 21 U.S.C. § 841.  The district court[1] sentenced Billingsley to 130 months, which included a two-level sentence enhancement for obstruction of justice.

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

**BACKGROUND**

On April 3, 1997, the police obtained a warrant to search Macon Billingsley's person and vehicle for drugs. Several police officers followed Billingsley to a Burger King parking lot and ordered him out of the car. Although no drugs were found on Billingsley's person or in his car, one of the officers saw Billingsley throw a small bag out of the car, which was later proven to be .8 grams of heroin. Subsequently, the officers obtained a warrant to search the apartment Billingsley shared with his wife. The police found several pieces of Billingsley's identification and medication for his diabetes. Inside Billingsley's diabetic syringe kit, the officers found 11.8 grams of crack cocaine and some heroin. More drugs were found throughout the house. They also found a narcotic cutting agent, a scale, packaging materials, a police radio scanner, and a pager.

After receiving *Miranda* warnings, Billingsley admitted that the drugs were his and asked to cooperate with the police. Billingsley was conditionally released to permit his cooperation, but was instructed to have daily contact with the police. Sentencing Hearing at 4-5, Trial Tr. I at 137. Billingsley allowed the police to set up and tape various conversations he had with other drug dealers, including a conversation with his heroin supplier, Eric Stiles. In late April 1997, after communications between Billingsley and the police broke down, Billingsley left the state without notifying the officials. He was located in Washington, D.C., on July 30, 1997, after being arrested on separate charges.

Despite his original agreement to cooperate, Billingsley pled not guilty and was tried in the United States District Court for the District of Minnesota. During the trial, a special agent for the Hennepin County Sheriff's Office was allowed to testify about the contents of the taped conversation between Billingsley and Stiles. The jury found Billingsley guilty of both counts and the trial court sentenced him to 130 months, enhancing his offense level by two levels for obstruction of justice.

Billingsley challenges (1) the district court's admission of the agent's testimony about the contents of the taped telephone conversation he had with Eric Stiles; (2) the sufficiency of the evidence on the crack cocaine count; (3) and the two-level sentencing enhancement for obstruction of justice. We affirm.

## DISCUSSION

### A. The Taped Conversation

Billingsley contends that the district court erred when it permitted an agent to testify to the contents of a taped conversation between Billingsley and his heroin supplier, Eric Stiles. During trial, the court ruled that the government could play the tape, but gave a limiting instruction to the jury that the evidence only went to knowledge and intent. Trial Tr. I at 116-20. The tape machine, however, was not functioning properly at trial, so the court allowed an agent to paraphrase what was stated in the conversation. The agent was also allowed to interpret the code words in the conversation, opining that Billingsley was referring to marijuana transactions and stood to make seventy or eighty thousand dollars. Trial Tr. III at 97-98.

Billingsley argues that these statements should never have been admitted for three reasons. First, Billingsley contends that the agent's testimony was hearsay. Second, Billingsley argues that the statements are extrinsic and inadmissible character evidence under Fed. R. Evid. 404(b). Finally, Billingsley argues that the statements he made during the conversation with Stiles were made pursuant to a cooperation agreement and should be excluded under Fed. R. Evid. 403.

First, Billingsley's statements were not hearsay because they constituted admissions against a party. Fed. R. Evid. 801(d)(2). Billingsley argues that his taped statements cannot be an admission because he was only saying what the police asked him to say. We disagree. The Seventh Circuit was faced with a similar situation in

*United States v. Hubbard*, 22 F.3d 1410 (7th Cir. 1994), *cert. denied*, 513 U.S. 1095 (1995). In *Hubbard*, a defendant's taped post-arrest statements to a co-conspirator, made during cooperation with the police, were admissible as voluntary admissions. *Hubbard*, 22 F.3d at 1417. The court acknowledged Hubbard's argument "that Rule 801(d)(2)(A) does not apply to [the defendant's] statements because statements under Rule 801(d)(2)(A) must be a 'party's own statement' and his statements were made at the bequest of the police and were, therefore, not his own." *Id*. at 1417 n.2. The court stated, however, that this was nothing more than a voluntariness argument and rejected it because "this is not a case where the law enforcement officials overbore [the defendant's] will; rather, he participated willingly in an effort to improve his own situation." *Id*. at 1417. Like the situation in *Hubbard*, Billingsley's statements in his conversation with Eric Stiles were made voluntarily. Therefore, Billingsley's statements are admissible as admissions.

Second, we reject the argument that the evidence of Billingsley's statement should have been excluded under Fed. R. Evid. 404(b). Rule 404(b) only applies to extrinsic evidence. *United States v. Heidebur*, 122 F.3d 577, 579 (8th Cir. 1997). The part of the conversation at issue in this case concerns the April 3, 1997, drug deal which was the basis for the indictment. Therefore, evidence of the statements pertaining to the drugs found by the police on April 3, 1997, are intrinsic and not excludable under Rule 404(b).

We also reject Billingsley's final argument that any evidence obtained while he cooperated with the police should have been excluded under Fed. R. Evid. 403.[2] Rule

---

[2]The defendant also alludes to the argument that the agent's oral testimony of the taped conversation is improper evidence. This is basically a best evidence argument under Federal Rule of Evidence 1002 and is without merit. Rule 1002 provides that "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress." Fed. R. Evid. 1002. If the original is destroyed, however, then the

403 provides the district court the ability "to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice." *United States v. Guerrero-Cortez*, 110 F.3d 647, 652 (8th Cir. 1997). We reverse "a district court's decision under the Rule 403 balancing test . . . only if there was a clear abuse of discretion." *United States v. Davis*, 154 F.3d 772, 780 (8th Cir. 1998). We find that the district court did not abuse its discretion in this case.[3]

## B. Sufficiency of the Evidence for the Cocaine Base Count

Billingsley contends that there was insufficient evidence for the jury to find him guilty of possession with intent to distribute crack cocaine.[4] He points out that there were no witnesses that testified seeing him possess or sell cocaine base. Further, Billingsley argues that although there were eleven grams of cocaine base found in his

---

district court may admit the testimony based upon secondary evidence. *United States v. Standing Soldier*, 538 F.2d 196, 203 (8th Cir. 1976). Rule 1004(1) provides that the "original is not required, and other evidence of the contents of a writing . . . is admissible if . . . [a]ll originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith." Fed. R. Evid. 1004(1). There are "no 'degrees' of secondary evidence and thus there [is] no requirement that [a] copy be introduced in preference to . . . oral testimony." *Standing Soldier*, 538 F.2d at 203 n.8 (citing Fed. R. Evid. 1004 advisory committee's note). *See also United States v. Gerhart*, 538 F.2d 807, 809 (8th Cir. 1976) (stating that "once an enumerated condition of Rule 1004 is met, the proponent may prove the contents of a writing by any secondary evidence, subject to an attack by the opposing party not as to admissibility but to the weight to be given the evidence . . ."). Because the district court in this case could admit any form of secondary testimony once the tape was destroyed and because there is no evidence of bad faith, the agent's oral testimony was properly admitted.

[3]As the district court noted, the fact that Billingsley was cooperating with the police at the time the taped statements were made could properly be handled through cross examination.

[4]Billingsley does not challenge the sufficiency of the evidence with respect to the heroin charge.

apartment, he did not have exclusive control over the apartment. His wife and her friend also had access, and his wife testified that she had been using crack the day of the search. Finally, Billingsley argues that the quantity of cocaine base found in the apartment is entirely consistent with his wife's personal use. We are unpersuaded by his arguments. When viewed in the light most favorable to the verdict, we find there was sufficient evidence to support a guilty verdict on Billingsley's possession with intent to distribute cocaine base.

There is ample evidence that Billingsley possessed the cocaine base. At trial, Billingsley's wife testified that he possessed the cocaine base and a police officer recounted Billingsley's voluntary confession to that effect. Furthermore, the cocaine base was found in Billingsley's diabetic syringe kit which also contained pieces of his identification and medication. Most importantly, Billingsley admits that he possessed the heroin which was also found in the syringe kit. From this evidence, the jury could have properly found that Billingsley possessed the cocaine base.

There was also sufficient evidence of Billingsley's intent to sell the cocaine base. The government offered testimony of a taped conversation between Billingsley and his supplier to show intent and knowledge of the drug trade.[5] Even without this conversation, there is sufficient circumstantial evidence that Billingsley was selling the cocaine base. The police found a cutting agent, scales, and wrapping supplies in Billingsley's apartment. Courts have recognized that such scales and devices are "tools of the trade for drug dealers." *United States v. Ford*, 22 F.3d 374, 383 (1st Cir. 1994). Such "tools of the trade" are inconsistent with personal use. The quantity of drugs found in the defendant's apartment also supports an intent to sell. This court has held that "intent to distribute a controlled substance may be established by circumstantial evidence, including possession of a large quantity of controlled substance . . . ." *United*

---

[5]This conversation cannot be used as direct evidence that Billingsley was selling cocaine base, because the only drug discussed was heroin. (Trial Tr. I at 123).

*States v. Buchanan*, 985 F.2d 1372, 1377 (8th Cir. 1993). Testimony was presented that the volume of crack cocaine possessed by the defendant would have represented over 100 dosage units and had a street value of approximately $1,100 to $1,200. Trial Tr. I at 142-43. Furthermore, the crack cocaine was packaged into four separate units. Finally, the jury did not find Billingsley's denial of his intent to sell credible. Faced with this evidence, the jury could have properly found that Billingsley possessed the cocaine base with intent to sell.

## C. Sentencing Enhancement for Obstruction of Justice

Billingsley contends that the district court erred by enhancing his base offense level for obstruction of justice. The court imposed the enhancement because it found that Billingsley "had knowledge of the investigation, that [he] had knowledge that he would be prosecuted for his conduct on April 3, 1997, and that he left the jurisdiction in a willful attempt to evade prosecution." R. at 108. Billingsley does not dispute his actions. Billingsley argues, however, that although he backed out of a cooperation agreement, he never impeded his own investigation or prosecution.

The United States Sentencing Guidelines § 3C1.1 provides a two-level enhancement for obstruction of justice if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction." United States Sentencing Commission, *Guidelines Manual*, § 3C1.1 (1998). This court has stated that "[t]he district court has broad discretion to apply section 3C1.1 to a wide range of conduct." *United States v. Lyon*, 959 F.2d 701, 707 (8th Cir. 1992) (citation omitted). The Guidelines provide a non-exhaustive list of examples of the type of conduct to which this enhancement applies including "escaping or attempting to escape from custody before trial or sentencing; or willfully failing to appear, as ordered, for a judicial proceeding." USSG § 3C1.1, cmt. n.4(e). They also set forth a non-exhaustive list of the types of conduct that do not warrant application

of the adjustment including "avoiding or fleeing from arrest." USSG § 3C1.1, cmt. n.5(d). Avoiding arrest is "'pre-investigation' conduct [that] generally occurs without knowledge that an investigation is underway, and it does not warrant enhancement because it is more of an initial instinctive reaction than willful obstruction of justice." *United States v. Hare*, 49 F.3d 447, 453 (8th Cir. 1995), *cert. denied*, 516 U.S. 879 (1995). Billingsley concedes that leaving the jurisdiction was not an instinctive flight and therefore not automatically excludable by the Guidelines. Therefore, the question is whether the post-arrest, pre-indictment flight of a defendant who is not in custody falls within Section 3C1.1.

The facts relevant to the obstruction of justice enhancement are not in dispute. Billingsley was arrested when drugs were found in his apartment. Upon arrest, he offered to cooperate with the police and began such cooperation. Two or three weeks later, Billingsley backed out of the cooperation agreement and left the jurisdiction without informing the police. At the time he left the jurisdiction, no charges had been filed against him nor was he under a judicial order to stay within the jurisdiction. However, the police had conditioned his release on daily contact and had informed him that if he went back on the cooperation agreement, he would be charged with various drug offenses.

This situation is similar to the one this court faced in *United States v. Smith*, 62 F.3d 1073 (8th Cir. 1995), *cert. denied*, 516 U.S. 1098 (1996). In *Smith*, the defendant offered to cooperate with police during a post-arrest interview, "but gave a false address, retrieved and sold fraud proceeds, and fled." *Smith*, 62 F.3d at 1079. The defendant was indicted during her absence and located three years later. We held that those "facts contradict[ed] Smith's contention that she merely 'was not in the state when the agents began looking for her.'" *Id.* We stated that the facts instead indicated "that she actively impeded arrest and resolution of her case." *Id.* This was sufficient to support an enhancement for obstruction.

We held similarly in *United States v. Hare*, 49 F.3d 447 (8th Cir. 1995). In *Hare*, this court applied the obstruction of justice enhancement to a defendant who agreed to cooperate in an investigation and then fled to Canada.[6] *Hare*, 49 F.3d at 453. We held that "Hare's 'trip' to Canada was a willful breach of his agreement to cooperate in the investigation and not an instinctive pre-arrest flight" and concluded that the defendant's "flight to Canada at a time when he was supposedly cooperating pursuant to a cooperation plea bargain agreement warrants an enhancement for obstruction of justice." *Id.*

These cases are dispositive of the issue in the present case. As Billingsley admits, his flight from the jurisdiction was not merely to avoid arrest. Although he was not in custody, he had made an agreement to cooperate with the police and was aware that he had to keep in contact with the police or he would be indicted. He not only breached that agreement, but impeded the investigation and prosecution of his case. He was not found for three months, and could still have been at large today if he was not apprehended for a separate offense in Washington, D.C. Billingsley also had the intent to obstruct. Showing that the defendant committed the misconduct with knowledge of an investigation is enough to prove intent. *United States v. Oppedahl*, 998 F.2d 584, 586 (8th Cir. 1993). Billingsley was clearly aware of the investigation. For all of these reasons, the two-level enhancement for obstruction of justice was properly imposed.[7]

---

[6]The defendant in *Hare* also warned a co-conspirator that his arrest was imminent and left the country with criminally derived funds. The court held that these factors made it "an even more compelling case in which to apply the enhancement." *Hare*, 49 F.3d at 453. It was solely the flight during cooperation, however, that was the dispositive fact.

[7]Billingsley relies on the Eleventh Circuit case of *United States v. Alpert*, 28 F.3d 1104 (11th Cir. 1994), in support of his position that his conduct did not warrant the enhancement for obstruction of justice. In *Alpert*, the court held that leaving town during the midst of plea negotiations is not obstruction of justice. *Alpert*, 28 F.3d at 1106-07. The Eleventh Circuit stated that "the 3C1.1 enhancement does not apply to

## CONCLUSION

For the reasons set forth above, the judgment of conviction is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

persons engaged in criminal activity who learn of an investigation into that activity and simply disappear to avoid arrest, without more." *Id.* at 1107. This case is distinguishable from the case at hand. Unlike the defendant in *Alpert*, when Billingsley fled, he had already been arrested and had a cooperation agreement with the police.