# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1741
_____

United States of America,                    *
                                             *
            Appellee,                        *
                                             *
      v.                                     *
                                             *
Jose Mata-Peres,                             *
                                             *
            Appellant.                       *

_____

No. 06-2017
_____

Appeals from the United States
District Court for the Northern
District of Iowa.

United States of America,                    *
                                             *
            Appellee,                        *
                                             *
      v.                                     *
                                             *
Felix Luna-Hernandez,                        *
                                             *
            Appellant.                       *

_____

Submitted: January 9, 2007
    Filed:   March 2, 2007

_____

Before WOLLMAN, BEAM, and MELLOY, Circuit Judges.

_____

BEAM, Circuit Judge.

Jose Mata-Peres pled guilty to five counts of methamphetamine possession and sales and one count of knowingly completing a false employment eligibility form. Felix Luna-Hernandez pled guilty to one count of knowingly and intentionally distributing and aiding and abetting in the distribution of methamphetamine. Each defendant was sentenced separately by the district court[1] and each contests aspects of his sentencing.

## I.    MATA-PERES

Mata-Peres challenges two aspects of his sentencing:  a two-level section 3B1.1(c) adjustment for a supervisory or managerial role in the offense and the ultimate reasonableness of his sentence.

To support the enhancement, Detective Lisa Kenny of the Storm Lake, Iowa, Police Department testified about sales made to a confidential informant (CI).  A co-worker of the CI set up meetings with the CI and Mata-Peres to carry out controlled buys.  The date, time, location, drug amount, and price would be set at work between the CI and the co-worker, but then the co-worker would have to confirm the amount and the price with Mata-Peres.

On April 23, 2005, the CI arrived at the designated location, where the CI gave money to the co-worker, and the co-worker gave the money to Mata-Peres.  Mata-Peres then handed the methamphetamine to the co-worker, and the co-worker handed the drugs to the CI.  Mata-Peres spoke only Spanish, the CI spoke only English, and the bilingual co-worker served as a translator.  On May 7, 2005, a similar transaction

---

[1]The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa.

took place, but the CI paid for only half of the drugs and paid the balance on June 3, 2005. During the June 3 meeting, the CI handed the money to the co-worker who passed it to Mata-Peres and the three began making arrangements for a larger sale.

The final sale was set up by the CI and the co-worker, who called Mata-Peres from a cell phone while at work to confirm the amount of methamphetamine and fix the price, time and location. As arranged, on June 8, 2005, the CI went to the location, but the co-worker never showed up. The CI located Mata-Peres, found Luna-Hernandez to translate and completed the transaction. The police also found an ounce of methamphetamine, $350.00 and a scale in Mata-Peres' house.

Based on Detective Kenny's testimony, the district court found that the government had shown, by a preponderance of the evidence, that Mata-Peres' conduct warranted a section 3B1.1(c) adjustment for his having a supervisory or managerial role in the offense. The district court found that Mata-Peres exerted more control over the situation than did the co-worker, primarily because Mata-Peres made the ultimate decision on price and quantity and also carried and held the drugs and money.

We review the district court's decision to apply a section 3B1.1(c) adjustment for clear error. United States v. Plancarte-Vazquez, 450 F.3d 848, 853 (8th Cir. 2006). Since Mata-Peres organized or led at least one other participant and assumed the leadership role of determining the price for the drug sales, the district court's decision to apply this enhancement was not clearly erroneous. United States v. Willis, 433 F.3d 634, 636-67 (8th Cir.), cert. denied, 127 S. Ct. 144 (2006).

The district court determined that Mata-Peres' Guidelines sentencing range, with the section 3B1.1(c) enhancement, was 151 to 188 months. The district court then rejected Mata-Peres' motion for a variance and sentenced him to the bottom of the Guidelines range. Now, Mata-Peres claims that the sentence is unreasonable because the district court failed to recognize its ability to sentence him below the

-3-

advisory Guidelines range. Mata-Peres bases this claim on the district court's noting, in its denial of the motion, "that lack of criminal history is taken into account in the defendant's criminal history and, therefore, something that's taken into account in the criminal history isn't a proper basis for a variance."

However, Mata-Peres' claim disregards the court's further remarks, "I don't believe . . . that a variance under Title 18, 3553(a) is appropriate in this case looking at all of the factors. I don't find sufficient factors that would justify a sentence outside of the advisory United States Sentencing Guideline range." The district court correctly observed that a wide variance from a Guidelines sentence based solely on lack of criminal history risks running afoul of section 3553(a)(6), which requires courts "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." United States v. Myers, 439 F.3d 415, 418 (8th Cir. 2006) (citing 18 U.S.C. § 3553(a)(6)).

From the sentencing transcript, the district court considered whether to vary from the Guidelines sentencing range and decided to sentence Mata-Peres at the bottom of the Guidelines range, based on all the 18 U.S.C. § 3553(a) factors. The district court followed the proper sentencing procedure. "[T]he district court recognized its right under Booker to sentence outside the Guidelines, determined the proper, applicable advisory Guidelines range, chose a sentence at the low end of that range, and then justified that sentence by specific reference to the § 3553(a) factors." United States v. Shepard, 462 F.3d 847, 875 (8th Cir.), cert. denied, 127 S. Ct. 838 (2006). We find the district court recognized its discretionary authority to vary from the Guidelines and the sentence imposed is reasonable.

## II.    LUNA-HERNANDEZ

Luna-Hernandez, likewise, alleges two sentencing errors:  the addition of two criminal history points for committing the instant offense while on probation and the district court's engaging in fact-finding on the probation issue, which ultimately disqualified Luna-Hernandez from 18 U.S.C. § 3553(f) safety-valve relief and required the imposition of a mandatory-minimum sentence.

We review the district court's interpretation and application of the Sentencing Guidelines de novo, and its factual findings for clear error.  United States v. Grinbergs, 470 F.3d 758, 760 (8th Cir. 2006).  In his brief, Luna-Hernandez essentially argues that the district court should not have assessed two criminal history points for commission of the instant offense while on probation because Iowa did not follow sufficient procedures to give him notice that he was still on probation.

Contrary to these assertions, a judgment entered in the Iowa District Court for Buena Vista County was introduced at sentencing, and this Iowa judgment stated that Luna-Hernandez was placed on probation on September 20, 2004, for a period of one year.  Luna-Hernandez' claim of lack of notice is unavailing, as the Iowa judgment itself notes that Luna-Hernandez took a copy of the judgment on September 20, 2004.  Also, Luna-Hernandez made a subsequent court appearance asking for an extension of time to comply with one of the specific requirements of the Iowa judgment.  Since Luna-Hernandez' conduct in the instant offense occurred on June 8, 2005, he was still on probation and the two additional criminal history points were properly assessed pursuant to section 4A1.1(d) of the Sentencing Guidelines.

Luna-Hernandez' second allegation of sentencing error takes the form of a three-part argument.  The first part of this argument, that the government was required to provide witnesses to prove that he was on probation at the time of the instant

offense, is rejected. The government offered a certified copy of the judgment against him, and Luna-Hernandez did not object to this exhibit.

Second, Luna-Hernandez argues that the district court violated Booker by judicially finding that the defendant was on probation. In holding that mandatory sentencing guidelines are unconstitutional, United States v. Booker decreed, "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." 543 U.S. 220, 244 (2005). Luna-Hernandez' argument that the district court erred in finding facts about the nature of the conviction and its ensuing punishment is unavailing. See, e.g., Shepard, 462 F.3d at 871-72 (examining the nature of prior convictions for sentencing purposes), United States v. Davis, 417 F.3d 909, 913 (8th Cir. 2005) (rejecting defendant's arguments that the facts related to a prior conviction should have been submitted to the jury prior to imposition of a mandatory-minimum sentence), cert. denied, 126 S. Ct. 1160 (2006).

Third, Luna-Hernandez argues that this judicial fact-finding results in the imposition of a statutorily mandated minimum sentence in contravention of Booker. See, e.g., Shepard, 462 F.3d at 875 (explaining that no Booker error occurred when the defendant was sentenced to a statutorily defined mandatory-minimum sentence as a career offender, in a case where the jury had determined the drug quantity at issue and the court had determined the defendant's status as a career offender based on previous convictions). However, since the judicial fact-finding related only to the punishment imposed for a previous conviction, the district court did not violate Booker.

## III. CONCLUSION

For the reasons stated, we affirm the district court.

_____