# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3254

_____

United States of America,              *

                          *

         Appellee,          *

                          *   Appeal from the United States

     v.                    *   District Court for the

                          *   Northern District of Iowa.

Mack Arthur Davis, Jr.,        *

                          *

         Appellant.        *

_____

Submitted: May 14, 2009
Filed: October 8, 2009

_____

Before RILEY, SMITH, and COLLOTON, Circuit Judges.

_____

RILEY, Circuit Judge.

Mack Arthur Davis, Jr. (Davis) appeals his conviction and the sentence he received after he pled guilty to distributing crack cocaine. The district court[1] denied Davis's motion to withdraw his guilty plea, found Davis was a career offender who obstructed justice and played a managerial or supervisory role in the distribution of crack cocaine, and sentenced Davis to 293 months imprisonment. We affirm.

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa, adopting the report and recommendation of the Honorable Jon S. Scoles, United States Magistrate Judge for the Northern District of Iowa.

## I.    BACKGROUND

Davis was arrested on June 28, 2006, after he sold crack cocaine to a confidential informant on June 20, 22, and 28, 2006, in Cedar Rapids, Iowa. On all three occasions, Amanda Shryers (Shryers) drove Davis to the location of the sales. Shryers was also arrested. Davis agreed to cooperate with law enforcement, and made fourteen controlled purchases. In late August 2006, law enforcement officers lost contact with Davis, and later learned Davis had fled to Memphis, Tennessee. The State of Iowa issued several warrants for Davis's arrest. In June 2007, Davis, in his absence, was indicted on three counts of distributing crack cocaine. In August 2007, Davis was arrested in Memphis. Davis denied his identity until a Cedar Rapids police officer flew to Memphis to testify at an identity hearing requested by Davis.

On January 9, 2008, a grand jury returned a three-count superseding indictment against Davis. Counts 1 and 2 charged Davis with distributing crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and Count 3 charged Davis with distributing crack cocaine within 1,000 feet of an elementary school, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 860. The government provided notice pursuant to 21 U.S.C. § 851 that the government intended to rely on Davis's prior felony convictions to subject Davis to career offender status.

At a hearing on January 28, 2008, Davis's attorney inquired whether the district court intended to set a deadline by which Davis would need to plead guilty in order to receive a reduction for acceptance of responsibility. In an order dated February 1, 2008, the district court informed Davis his "deadline for receiving the additional one-level decrease for acceptance of responsibility" under U.S.S.G. § 3E1.1(b) was February 4, 2008.

On February 6, 2008, Davis appeared before Magistrate Judge Jon S. Scoles (magistrate) and entered a guilty plea to the lesser included offense in Count 3 of

distributing crack cocaine, in violation of 18 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 851. Davis's plea agreement with the government was a cooperating plea agreement. The government dismissed the remaining counts. The district court accepted Davis's guilty plea on February 21, 2008.

On March 11, 2008, Davis filed a motion to withdraw his guilty plea. The magistrate held a hearing on Davis's motion on March 31, 2008, at which time it became apparent Davis's attorney would be required to testify. Thus, Davis's attorney withdrew, and a new attorney was appointed to represent Davis. Following a second hearing on the motion, the magistrate issued a report and recommendation, recommending the district court deny Davis's motion to withdraw his guilty plea. The district court adopted the report and recommendation and denied Davis's motion.

A United States Probation Officer prepared a presentence investigation report (PSR) for Davis, calculating a base offense level of 30. The PSR recommended a two-level increase for Davis's role in the drug transactions, pursuant to U.S.S.G. § 3B1.1(c), and an additional two-level increase for obstruction of justice, pursuant to U.S.S.G. § 3C1.1. The PSR did not recommend a reduction for acceptance of responsibility. The PSR suggested Davis qualified as a career offender under U.S.S.G. § 4B1.1 because Davis had one prior felony for a controlled substance offense and another prior felony that constituted a crime of violence, indecent contact with a child. The PSR's calculations resulted in a total offense level of 34, a criminal history category of VI, and an advisory Guidelines range of 262 to 327 months.

Davis was sentenced on September 17, 2008. After hearing arguments from counsel, the district court found the government proved by a preponderance of the evidence that Davis was an organizer, leader, manager, or supervisor in the drug transactions, and the district court imposed a two-level role enhancement. The district court also found the government proved by a preponderance of the evidence that Davis obstructed justice, and the district court increased Davis's offense level by two

additional levels. The district court then decided by a preponderance of the evidence that Davis failed to demonstrate his entitlement to a reduction for acceptance of responsibility, giving Davis an adjusted offense level of 34.

Next, the district court determined Davis had two predicate offenses which qualified him as a career offender. While Davis's career offender status did not increase his offense level, Davis's criminal history category increased to category VI. Based upon these calculations, Davis's advisory Guidelines range was 262 to 327 months. The government informed the district court it would not be making a U.S.S.G. § 5K1.1 motion for a downward departure based on substantial assistance. After considering the 18 U.S.C. § 3553(a) factors, the district court sentenced Davis to 293 months imprisonment and 6 years supervised release. After the sentencing hearing, the district court issued a sentencing memorandum, explaining the district court's rationale for finding Davis was a career offender.

Davis appeals his conviction and sentence on various grounds. Davis contends the district court erred by (1) denying Davis's motion to withdraw his guilty plea; (2) finding Davis was a career offender; (3) basing the sentence on contested and unproven allegations in the PSR; (4) finding Davis was an organizer, leader, manager, or supervisor in the drug distribution; (5) finding Davis obstructed justice; and (6) imposing an unreasonable sentence. Davis also claims the government improperly refused to make a U.S.S.G. § 5K1.1 motion for a downward departure based on Davis's substantial assistance.

II.    DISCUSSION
A.    Motion to Withdraw Guilty Plea
Davis asserts the district court erred when it denied Davis's motion to withdraw his guilty plea. A district court's denial of a motion to withdraw a guilty plea is reviewed for abuse of discretion. United States v. Mugan, 441 F.3d 622, 630 (8th Cir. 2006) (citing United States v. Payton, 168 F.3d 1103, 1105 (8th Cir. 1999)). "A guilty

plea is a solemn act not to be set aside lightly." United States v. Prior, 107 F.3d 654, 657 (8th Cir. 1997) (citation omitted)). Under Fed. R. Crim. P. 11(d)(2)(B), a guilty plea may be withdrawn before sentencing if "the defendant can show a fair and just reason for requesting the withdrawal." The district court may also "consider whether the defendant asserts his legal innocence to the charge, the length of time between the guilty plea and the motion to withdraw, and whether the withdrawal would prejudice the government." United States v. Teeter, 561 F.3d 768, 770 (8th Cir. 2009) (citing United States v. Austin, 413 F.3d 856, 857 (8th Cir. 2005)). "'Post-plea regrets by a defendant caused by contemplation of the prison term he faces are not a fair and just reason for a district court to allow a defendant to withdraw a guilty plea, or for this court to reverse the district court.'" Teeter, 561 F.3d at 770-71 (quoting United States v. Stuttley, 103 F.3d 684, 686 (8th Cir. 1996)).

In the motion to withdraw his guilty plea, Davis contended he misunderstood the plea agreement and the operation of U.S.S.G. § 3E1.1(b), and his "guilty plea was not knowingly, intelligently, and voluntarily entered." Davis testified he did not understand at the time he entered his guilty plea that the government had to file a motion in order for Davis to receive the additional one-level decrease for acceptance of responsibility. Davis declared he would not have pled guilty if he had known he was not guaranteed a three-level decrease by pleading guilty before the district court's deadline. Davis also contended he did not understand that if the district court found Davis obstructed justice, it was unlikely Davis would receive an acceptance of responsibility reduction. Davis suggested he only had time to "skim[] through" the plea agreement because it was a "rush job."

At the hearing, Davis also testified about the discussions he had with his attorney when deciding whether to plead guilty, and Davis shared with the court the advice Davis's attorney gave Davis. Due to Davis's disclosures, the government announced its intention to call Davis's attorney as a witness, and Davis's attorney moved to withdraw as Davis's counsel.

A second hearing was held on Davis's motion to withdraw his guilty plea after new counsel was appointed to represent Davis and the parties submitted briefs on the issue of attorney-client privilege. Because Davis asserted his former attorney had given Davis erroneous advice about the consequences of a guilty plea, and because Davis offered testimony about their conversations at the first hearing, the magistrate ruled the government could question Davis's former attorney both about what Davis's attorney told Davis and what Davis said to his attorney. Davis's former attorney then testified about his conversations with Davis. The magistrate issued a report and recommendation, recommending the district court deny Davis's motion.

Davis objected to the report and recommendation. First, Davis argued the report and recommendation failed to mention (1) Davis's proffer interview took place on the same day Davis signed the plea agreement, and (2) the plea agreement contradicted some of the facts revealed during Davis's proffer interview. Second, Davis maintained he should be permitted to withdraw his guilty plea because, during his proffer interview, Davis admitted he purchased an amount of crack cocaine "slightly exceeding 50 grams," but the plea agreement stated the parties stipulated that Davis "sold more than 50 grams" of crack cocaine. The district court overruled Davis's objections, adopted the report and recommendation, and denied Davis's motion to withdraw his guilty plea.

On appeal, Davis now argues he should be permitted to withdraw his guilty plea because (1) at the second hearing before the magistrate, the testimony of Davis's former appointed attorney violated Davis's attorney-client privilege, and (2) Davis's former attorney gave Davis erroneous advice regarding the consequences of Davis's guilty plea.

### 1. Attorney-Client Privilege

Davis admits he partially waived the attorney-client privilege when Davis testified about what his attorney said to him. Davis maintains he waived the privilege

only with respect to what Davis's attorney told Davis, but did not waive the privilege regarding what Davis said to his attorney or what Davis's attorney said to the prosecutor during plea negotiations. Thus, Davis contends Davis's former attorney's testimony "was not appropriately limited." We disagree.

Davis waived the attorney-client privilege as to his discussions with his attorney during the plea agreement negotiations in two ways. First, Davis voluntarily testified about his communications with his attorney at the first hearing. See United States v. Workman, 138 F.3d 1261, 1263 (8th Cir. 1998) (citations omitted) ("Voluntary disclosure of attorney client communications expressly waives the privilege."). Davis's waiver extends to "any information directly related to that which was actually disclosed." Id. (citing 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2016.2). Second, Davis waived the attorney-client privilege when Davis asserted he should be able to withdraw his guilty plea based on the erroneous advice of his appointed counsel. See Workman, 138 F.3d at 1263 ("The attorney client privilege may also be implicitly waived . . . by raising attorney advice as a defense." (internal citations omitted)). Of course, what Davis's lawyer said to the prosecutor during plea negotiations is not covered by the attorney-client privilege, because the comments to a third party, here an adversary, are not confidential attorney-client communications. Davis cannot use attorney-client privilege "as both a shield and a sword." Id. at 1264.

### 2. Erroneous Advice

Davis next proposes his motion to withdraw his guilty plea should have been granted because Davis's former attorney gave erroneous advice regarding the likelihood (1) Davis would receive credit for acceptance of responsibility, and (2) the government would make a motion for a downward departure for substantial assistance. In his motion to withdraw his guilty plea, Davis cast his claims as a "misunderstanding" of the plea agreement and the application of the Guidelines.

However, during the second hearing before the magistrate and now on appeal, Davis recast his claims as claims of ineffective assistance of counsel.

To the extent Davis continues to assert his motion to withdraw his guilty plea should have been granted based on Davis's misunderstanding of the agreement and the application of the Guidelines, we disagree. We have explained:

> A defendant may not withdraw a plea . . . merely because he misunderstands how the sentencing guidelines will apply to his case. So long as the district court tells a defendant the statutory range of punishment that he faces and informs him that the sentencing guidelines will be used in determining the ultimate sentence, the plea is binding. This is true even where the misunderstanding is caused by defense counsel's erroneous estimation of what the ultimate sentence will be.

United States v. Ramirez-Hernandez, 449 F.3d 824, 826 (8th Cir. 2006) (internal citations omitted). Our review of the plea hearing transcript satisfies us the magistrate fully complied with the requirements of Fed. R. Crim. P. 11(b), and Davis does not suggest otherwise.

Davis also claims his motion to withdraw his guilty plea should have been granted due to the erroneous advice, or ineffective assistance, of his attorney. "Claims of ineffective assistance of counsel . . . are usually best litigated in collateral proceedings." Ramirez-Hernandez, 449 F.3d at 826-27 (citation omitted). "We will consider ineffective-assistance claims on direct appeal only where the record has been fully developed, where not to act would amount to a plain miscarriage of justice, or where counsel's error is readily apparent." Id. at 827 (citation omitted). Because Davis asserted his ineffective assistance claim at the second hearing, and Davis's former attorney testified at the hearing, we conclude the record is sufficiently developed to permit our review. See id. ("A properly developed record for purposes of determining [whether] a claim of ineffective assistance of counsel [justifies a

withdrawal of a guilty plea] would include cross-examination by [the defendant] of his counsel on the question of what advice counsel gave him.").

Davis complains his attorney provided ineffective assistance because the attorney failed to advise Davis that (1) Davis likely would not receive a reduction for acceptance of responsibility if Davis were found to have obstructed justice, and (2) the district court could only reduce Davis's offense level by two levels for acceptance of responsibility unless the government made a motion for the third level.

"[T]he two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel." Hill v. Lockhart, 474 U.S. 52, 58 (1985) (citing Strickland v. Washington, 466 U.S. 668 (1984)). First, "the defendant must show that counsel's representation fell below an objective standard of reasonableness," id. at 57 (quoting Strickland, 466 U.S. at 687-88), and second, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial," id. at 59.

Davis's attorney provided the following testimony in regard to Davis's acceptance of responsibility: "I specifically remember explaining that under the Honken case there was a formidable barrier . . . to getting the reduction for acceptance of responsibility if obstruction of justice was found." The attorney did admit, "[I]n all fairness to Mr. Davis, the one thing that I did not advise him of, and I probably should have, in retrospect, is that . . . the government must make the motion for the third-level reduction." However, the attorney also explained that he had read to Davis the provision in the plea agreement that stated,

> The parties agree to litigate whether any [acceptance of responsibility] adjustment applies under USSG §3E1.1. The parties understand that application of an upward adjustment [for obstruction of justice] under USSG §3C1.1 may preclude any decrease for acceptance of

responsibility, unless defendant's [acceptance of responsibility] is "extraordinary. . . ." [I]t is not the United States' present intent to make a motion [for the third-level reduction] under USSG §3E1.1(b), as the United States does not agree defendant timely accepted responsibility.

Davis also charges his attorney erroneously advised him the government would file a substantial assistance motion.[2]  Davis's attorney testified, "I told [Davis] explicitly that I believed the government would file the motion because of the quantity and the quality of [Davis's] prior cooperation."  Yet, Davis's attorney testified he also read the provisions of the plea agreement to Davis, and one of the provisions stated,

The United States may, but shall not be required to, make a motion pursuant to [U.S.S.G.] §5K1.1 . . . requesting the court to depart below the [advisory Guidelines range] in the event defendant provides "substantial assistance."  This decision shall be in the sole discretion of the United States Attorney's Office . . . .  No downward departure for "substantial assistance" may be made absent a government motion under § 5K1.1.

Davis's ineffective assistance claims fail.  Even if Davis's allegations regarding the advice of his attorney were accepted as true, Davis's plea agreement accurately described the procedure and requirements for obtaining a reduction for acceptance of responsibility and a downward departure for substantial assistance.  Davis's attorney read the plea agreement to Davis, Davis placed his initials next to each provision of the plea agreement, and the district court properly assessed Davis's understanding of the plea agreement and application of the Guidelines.  Assuming Davis's counsel's opinion and advice were deficient, Davis cannot show he was prejudiced.

---

[2]Davis did not assert this claim in his motion to withdraw his plea nor in his objections to the magistrate's report and recommendation.  Assuming Davis had not waived this argument by failing to raise it in the district court, we nevertheless find the argument lacks merit.

We conclude Davis has not articulated "a fair and just reason for requesting the withdrawal." See Fed. R. Crim. P. 11(d)(2)(B). Moreover, Davis has not propounded his innocence, he filed his motion to withdraw his plea more than one month after he pled guilty and eighteen days after the district court accepted the guilty plea, and the government may be prejudiced if Davis is permitted to withdraw his guilty plea approximately two years after he was arrested and nearly a year and a half after he pled guilty. We conclude the district court did not abuse its discretion in denying Davis's motion.

## B.    Sentencing Issues

Davis appeals his sentence on several grounds, asserting the district court erred by (1) finding Davis was a career offender; (2) basing Davis's sentence in part upon contested and unproven allegations in the PSR; (3) finding Davis obstructed justice; (4) finding Davis was an organizer, leader, manager, or supervisor in the drug distribution; (5) refusing to compel the government to make a motion under U.S.S.G. § 5K1.1 for a downward variance for Davis's substantial assistance; and (6) imposing an unreasonable sentence. We address each of these claims separately.

### 1.    Career Offender

Davis first argues the district court erred in finding Davis was a career offender based upon the district court's finding that Davis's prior conviction for "indecent contact with a child by solicitation" qualified as a crime of violence under U.S.S.G. § 4B1.2. "We review de novo a district court's finding that prior convictions constitute crimes of violence as defined in § 4B1.2." United States v. LeGrand, 468 F.3d 1077, 1081 (8th Cir. 2006) (citation omitted).

To be characterized as a career offender, a defendant (1) must have been "at least eighteen years old at the time the defendant committed the instant offense of conviction," (2) the defendant's "instant offense of conviction [must be] a felony that is either a crime of violence or a controlled substance offense," and (3) the defendant

must have "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a).

The only element in dispute is whether Davis has two predicate felony convictions. Davis does not dispute his March 3, 1994, felony conviction in the United States District Court for the Northern District of Iowa for distribution of crack cocaine, in violation of 18 U.S.C. § 841(a)(1) and (b)(1)(C), qualifies as a controlled substance offense. However, Davis disputes whether his April 5, 1999, conviction in Iowa state court for indecent contact with a child qualifies as a crime of violence.

The Guidelines define the term "crime of violence" as:

any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that —

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). The definition of "crime of violence" in U.S.S.G. § 4B1.2(a) closely tracks the definition of "violent felony" in 18 U.S.C. § 924(e)(2)(B). See James v. United States, 550 U.S. 192, 206 (2007). "When analyzing a predicate felony, Begay reiterates that courts should consider how the law defines the crime, not how a crime might be committed on a particular occasion." United States v. Williams, 537 F.3d 969, 972 n.1 (8th Cir. 2008) (citing Begay v. United States, 553 U.S. __, __, 128 S. Ct. 1581, 1584 (2008)).

Davis was convicted of indecent contact with a child by solicitation, in violation of Iowa Code § 709.12(4), which provides,

-12-

A person eighteen years of age or older is upon conviction guilty of an aggravated misdemeanor if the person commits any of the following acts with a child, not the person's spouse, with or without the child's consent, for the purpose of arousing or satisfying the sexual desires of either of them:

. . . .

4.     Solicit a child to engage in any act prohibited under [Iowa Code §] 709.8, subsection 1, 2, or 4.

Iowa Code § 709.8 in turn declares:

It is unlawful for any person sixteen years of age or older to perform any of the following acts with a child with or without the child's consent unless married to each other, for the purpose of arousing or satisfying the sexual desires of either of them:

1.     Fondle or touch the pubes or genitals of a child.

2.     Permit or cause a child to fondle or touch the person's genitals or pubes.

. . .

4.     Inflict pain or discomfort upon a child or permit a child to inflict pain or discomfort on the person.

Iowa Code § 709.8.  Under this statute, "a 'child' is any person under the age of fourteen years."  Iowa Code § 702.5.  An aggravated misdemeanor is punishable by a term of imprisonment not to exceed two years.  Iowa Code § 903.1(2).  Both Davis and the government agree Davis was convicted of the conduct described in § 709.8(2) above.

Because the elements of the statutes under which Davis was convicted did not include: "the use, attempted use, or threatened use of physical force against the person of another," U.S.S.G. § 4B1.2(a)(1) does not apply, nor was Davis convicted of "burglary of a dwelling, arson, or extortion."  U.S.S.G. § 4B1.1(a)(1) and (2).  Thus, to qualify as a crime of violence, we must find Davis's conviction falls under

-13-

§ 4B1.1(a)(2)'s "otherwise" clause, that is, the conviction must "involve[] conduct that presents a serious potential risk of physical injury to another."

In Begay, the Supreme Court analyzed the "otherwise" clause contained in 18 U.S.C. § 924(e)(2)(B)(ii).[3] See Williams, 537 F.3d at 972 (citing Begay, 128 S. Ct. 1581). The Supreme Court "held that for a crime to fall within the 'otherwise' clause it must pose a similar degree of risk of physical injury as the example crimes and be similar in kind to the example crimes." Id. (citing Begay, 128 S. Ct. at 1585-86). "Therefore, even if a crime presents the same degree of risk of physical injury as the example crimes, it is not covered by the 'otherwise' clause unless it is also similar in kind to the example crimes." Id. (citing Begay, 128 S. Ct. at 1586). To be "similar in kind" to the example crimes, the Supreme Court stated a crime "should typically involve 'purposeful, violent, and aggressive conduct.'" Id. (quoting Begay, 128 S. Ct. at 1586).

The district court issued a ten page sentencing memorandum explaining the court's rationale for finding Davis qualified as a career offender. In the memorandum, the district court reasoned Davis's conviction for indecent contact with a child "poses a similar degree of risk of physical injury as burglary of a dwelling, arson, extortion or crimes involving the use of explosives." The district court observed that our court "has long recognized that sexual activity between adults and children is very dangerous, because of the inherent physical and emotional differences between them." The district court also reasoned Davis's conviction was similar in kind to the example crimes, declaring, "When an adult asks a child to fondle or touch his genitals or pubes,

---

[3]The "otherwise" clause under 18 U.S.C. § 924(e)(2)(B)(ii) is nearly identical to the "otherwise" clause under U.S.S.G. § 4B1.2(a)(2). See Clinkscale, 559 F.3d at 817. Section 924(e)(2)(B)(ii)'s "otherwise" clause states a felony conviction is a "violent felony" if the conviction "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."

the adult clearly acts in a purposeful and aggressive manner," and "[g]iven the risks of physical and psychological harm to the child and the necessarily close physical proximity of the adult to the child, the solicitation is also violent."

Davis disagrees with the district court and argues his conviction for indecent contact with a child did not involve risk of physical injury to another nor was it similar in kind to the example crimes. We, however, need not decide whether Davis's prior conviction for indecent contact with a child constitutes a crime of violence. Even if we assume, for the sake of argument, the district court erred in finding Davis was a career offender, that error would be harmless.

At sentencing, the government queried whether the district court would have imposed the same sentence had the district court not found Davis was a career offender. The district court responded affirmatively, and explained that if Davis were not a career offender, he would have a criminal history category of V and an advisory Guidelines range of 235 to 293 months. The court expounded, based on the district court's § 3553(a) analysis, 293 months was the appropriate sentence, and 293 months "happen[ed] to be in the overlap" of the advisory Guidelines range for a criminal history category of V and VI. Because the district court explicitly stated it would have imposed a sentence of 293 months imprisonment regardless of whether Davis was a career offender, any error on the part of the district court is harmless, and we affirm.

### 2. Reliance on Contested and Unproven Allegations in the PSR

Davis contends the district court "relied upon a number of contested factual matters set forth in the [PSR] when imposing" Davis's sentence. Davis claims the government failed to offer any evidence in support of these contested matters, and thus the district court's consideration of these matters was improper. Because Davis did not object at sentencing to the district court's reliance on the factual allegations in the PSR, we review this argument for plain error. See United States v. Long, 532

F.3d 791, 796 (8th Cir. 2008) (citation omitted) ("An argument raised for the first time on appeal is reviewed for plain error only.").

"'[U]nless a defendant objects to a specific factual allegation contained in the PSR, the court may accept that fact as true for sentencing purposes.'" United States v. Razo-Guerra, 534 F.3d 970, 975 (8th Cir. 2008) (quoting United States v. Moser, 168 F.3d 1130, 1132 (8th Cir. 1999)). "When the defendant so objects and the relevant responsive evidence has not already been produced at trial, 'the government must present evidence at the sentencing hearing to prove the existence of the disputed facts.'" United States v. Wintermute, 443 F.3d 993, 1005 (8th Cir. 2006) (quoting United States v. Poor Bear, 359 F.3d 1038, 1041 (8th Cir. 2004)). "[W]e require that objections to the PSR be made 'with specificity and clarity' before a district court is precluded from relying on the factual statements contained in the PSR." Razo-Guerra, 534 F.3d at 976 (citing United States v. Wajda, 1 F.3d 731, 732 (8th Cir. 1993)). The reason we require specific objections is "to put the Government on notice of the challenged facts" which the government will need to prove at the sentencing hearing. Id. (internal citation omitted).

Davis maintains the district court relied upon the contested, but unproven, factual allegations in paragraphs 48, 49, 57, and 58 of the PSR.[4] The paragraphs cited

---

[4]Davis posits the district court made findings which were contrary to paragraphs 57 and 58 of the PSR. The district court stated, after Davis's prison term for his first federal offense at the age of eighteen, Davis "violated his supervised release on the federal conviction and went back to prison, and that was because of a new law violation; a very serious offense, indecent contact with a child, and that was at age twenty-three." Davis correctly notes the district court misspoke. The PSR states Davis's supervised release was revoked on October 26, 2000, for driving under the influence, rather than indecent contact with a child. We find the district court's misstatements do not constitute plain error. The district court found Davis's supervised release was revoked for a new crime, which is correct, and the district court was also correct that Davis did have a later conviction for indecent contact with a child.

-16-

by Davis constitute the criminal history portion of the PSR and recite Davis's juvenile adjudications and adult criminal convictions. With respect to these paragraphs, Davis made the following objection: "¶¶ 48-87: Mr. Davis does not concede the accuracy of any of the summaries of the offense conduct for the offenses listed in the offense conduct section." Davis's vague, blanket objection was not made with sufficient "specificity and clarity" to "put the Government on notice" of the specific portions of the PSR Davis was contesting. See Razo-Guerra, 534 F.3d at 976. Additionally, Davis does not challenge the convictions themselves. The district court rightly relied upon the contested paragraphs when reciting Davis's various prior convictions, and with few exceptions recited only the convictions and not the underlying facts. We find no error, plain or otherwise, in the district court's adoption of the allegations in the PSR.

### 3.    Obstruction of Justice Enhancement

Davis submits the district court erred in imposing an obstruction of justice enhancement under U.S.S.G. § 3C1.1, which provides a two-level enhancement for obstruction of justice if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction," and "the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense." "We review the district court's factual findings underlying an adjustment for obstruction of justice for clear error, giving great deference to the sentencing court's determination." United States v. Brown, 539 F.3d 835, 839 (8th Cir. 2008) (citation omitted).

The district court found by a preponderance of the evidence that Davis obstructed justice when he fled from Iowa to Tennessee after he was arrested on the drug charges and had begun cooperating with police. The district court noted Davis fled without informing law enforcement and made no attempt to contact law enforcement during the year Davis was in Memphis. Davis maintains he should not

have received the enhancement because he fled Iowa "to protect himself from being further injured by drug dealers who learned of his cooperation with the police." The district court did not believe this explanation, and opined, if Davis's explanation were true, Davis "would [not] have denied his identity at the removal hearing," necessitating "an agent . . . to fly down there and testify as to his identity," a quite reasonable inference.

In the alternative, Davis, citing application note 5(d) to § 3C1.1, argues avoiding or fleeing from arrest is not ordinarily a basis for applying the obstruction of justice enhancement. The reasoning behind application note 5(d) is that "[a]voiding arrest is '"pre-investigation" conduct [that] generally occurs without knowledge that an investigation is underway, and it does not warrant enhancement because it is more of an initial instinctive reaction than willful obstruction of justice.'" United States v. Billingsley, 160 F.3d 502, 507 (8th Cir. 1998) (quoting United States v. Hare, 49 F.3d 447, 453 (8th Cir.1995)). In Billingsley, our court determined, where a defendant had been arrested, was aware of an ongoing investigation, and was cooperating with police at the time he fled, a two-level enhancement for obstruction of justice was warranted. See id. Giving the district court's factual findings and credibility determinations due deference, we find no clear error.

### 4. Role Enhancement

Davis challenges the district court's imposition of a two-level enhancement under U.S.S.G. § 3B1.1(c) for Davis's role in the offense. Section 3B1.1(c) provides, "If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels."

"We review for clear error the district court's factual findings underlying the imposition of a sentencing enhancement based on the defendant's role in the offense." United States v. Rosas, 486 F.3d 374, 376 (8th Cir. 2007) (citation omitted). "The [g]overnment has the burden of proving by a preponderance of the evidence that the

aggravating role enhancement is warranted." United States v. Garcia-Hernandez, 530 F.3d 657, 665 (8th Cir. 2008) (citing United States v. Mesner, 377 F.3d 849, 851-52 (8th Cir. 2004)).

To be subject to a role enhancement under § 3B1.1(c), a defendant need only manage or supervise one other participant. See United States v. Mata-Peres, 478 F.3d 875, 877 (8th Cir. 2007) (citation omitted). "We construe the terms 'manager' or 'supervisor' broadly under U.S.S.G. § 3B1.1." Rosas, 486 F.3d at 376 (quoting United States v. Erhart, 415 F.3d 965, 973 (8th Cir. 2005)). To determine whether a defendant qualifies for a role enhancement, application note 4 to U.S.S.G. § 3B1.1 counsels the district court to consider:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

The district court found by a preponderance of the evidence that Davis managed or supervised one other person, Shryers. Shryers testified at Davis's sentencing hearing that she gave Davis, who did not own a car, rides in Shryers's car approximately thirty to fifty times in June 2006. Davis would call Shryers and ask her to pick him up when he needed a ride. Shryers learned the purpose of these drives was "drug-related," and Shryers witnessed Davis exchange drugs for money. Shryers maintained she did not handle the drugs or money, and she did not know the people to whom Davis was dealing drugs, nor the people who supplied Davis with drugs. Davis paid Shryers each time she drove him, and Shryers estimated Davis paid her $300 total in June 2006, and also gave her whatever else she needed.

Davis argues Shryers's involvement in the drug distribution was as extensive as Davis's, and thus Davis cannot qualify as a manager or supervisor. The district

court found Shryers's testimony credible and found the government had proven by a preponderance of the evidence Davis's leadership role. Giving deference to the district court's credibility determinations and factual findings, we find no clear error.

### 5. Substantial Assistance

Davis argues the government failed to move for a downward departure for substantial assistance for reasons other than the quality of Davis's assistance. At the sentencing hearing, the government informed the district court the government would not be making a U.S.S.G. § 5K1.1 motion, and Davis's counsel asked the district court to find the government's failure to make such a motion was improper. Davis's counsel suggested the government's refusal to make the motion was "retribution" for Davis's fleeing to Tennessee. The district court found Davis had not made a prima facie showing of improper motivation or bad faith on the part of the government.

"The government has no duty to make a substantial assistance motion unless it has entered into a plea agreement with the defendant that creates such a duty." United States v. Mullins, 399 F.3d 888, 889-90 (8th Cir. 2005) (internal marks omitted) (quoting United States v. Wolf, 270 F.3d 1188, 1190 (8th Cir. 2001)). Davis's plea agreement provided, the government "may, but shall not be required to, make a motion pursuant to [U.S.S.G. § 5K1.1]." The plea agreement further specified, "This decision shall be in the sole discretion of the" government.

"'A district court may review the government's refusal to make a substantial assistance motion under . . . [U.S.S.G. §] 5K1.1, if such refusal (1) was prompted by an unconstitutional motive, such as the defendant's race or religion; or (2) was not rationally related to a legitimate government interest.'" United States v. Perez, 526 F.3d 1135, 1138 (8th Cir. 2008) (quoting Mullins, 399 F.3d at 890). "There is an intra-circuit split whether bad faith is an additional basis for compelling a motion for downward departure based on substantial assistance." Id. (citation omitted). We

review a district court's denial of a motion to compel the government to move for a downward departure for abuse of discretion.[5] See id. (citation omitted).

To make the requisite showing, a defendant must do more than present evidence of the defendant's substantial assistance and must make more than "generalized allegations of improper motive." Id. We require the defendant to "make a 'substantial threshold showing.'" Id. (quoting Mullins, 399 F.3d at 890). This is so, because we "presume a prosecutor has properly discharged [his] duties absent clear evidence to the contrary." Id. (quoting United States v. Pamperin, 456 F.3d 822, 825 (8th Cir. 2006)).

At Davis's sentencing, the government acknowledged Davis made fourteen controlled buys in the summer of 2006, but gave the following reasons for declining to make a § 5K1.1 motion: (1) Davis fled to Tennessee in 2006 and was unavailable to testify the year he was gone, (2) Davis filed a motion to withdraw his guilty plea, (3) Davis refused to testify to the grand jury in February 2008 pursuant to the plea agreement, (4) Davis disobeyed a court order requiring him to testify to the grand jury in May 2008, and (5) there were inconsistencies between Davis's proffer and his grand jury testimony. In response, Davis's counsel briefly described Davis's assistance and suggested the reasons given by the government were not "an appropriate basis for not making the 5K1.1 motion."

Due to the cursory nature of Davis's argument at sentencing, we conclude the district court did not abuse its discretion when it found Davis failed to make the

---

[5]On appeal, Davis claims the government improperly failed to make a substantial assistance motion. Davis does not explicitly argue he made the requisite prima facie showing to entitle him to a hearing on a motion to compel the government to make a substantial assistance motion; however, we will construe Davis's claim liberally to include such a claim.

requisite prima facie showing and refused to compel the government to make a § 5K1.1 motion.

### 6. Reasonableness of Sentence

Finally, Davis argues his sentence of 293 months imprisonment is unreasonable because the district court failed to take into account (1) the crack versus powder cocaine sentencing disparity, and (2) the failure of the government to move for a downward departure for substantial assistance resulted in Davis receiving no credit for his cooperation.

"We review all sentences, whether inside or outside the Guidelines range, under a deferential abuse of discretion standard." United States v. Pepper, 518 F.3d 949, 951 (8th Cir. 2008) (citing Gall v. United States, 552 U.S. 38, __, 128 S. Ct. 586, 597 (2007)), cert. denied, 129 S. Ct. 138 (2008). We "must first ensure that the district court committed no significant procedural error." Gall, 128 S. Ct. at 597. Examples of procedural error include: "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." Id. If we find "the district court's sentencing decision is procedurally sound, [we] then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." Id. "The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." Id.

Davis first contends the district court should have imposed a below Guidelines sentence to account for the sentencing disparity based on the crack versus powder cocaine ratio, and the resulting racial disparate impact. The district court considered this request and acknowledged the court had the power to vary downward from the advisory Guidelines range, but the district court declined to vary downward on this basis. The district court was well within its discretion not to vary downward. In

Kimbrough v. United States, 552 U.S. 85, __, 128 S. Ct. 558, 575 (2007), the Supreme Court held, "[I]t would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes." While the district court would have been within its discretion to consider the crack versus powder cocaine disparity in sentencing Davis, the district court certainly was not *required* to vary downward on this basis. See United States v. Saddler, 538 F.3d 879, 891 (8th Cir. 2008) (declaring, "a district court does not abuse its discretion when it fails to consider the crack/powder sentencing disparity").

Second, Davis claims the district court should have imposed a below Guidelines sentence because Davis did not receive credit for his substantial assistance. Our review of the sentencing transcript reveals the district court (1) treated the Guidelines as advisory; (2) properly calculated Davis's advisory Guidelines range, including the correct Guidelines range that would have applied had the court not found Davis was a career offender; (3) gave the parties an opportunity to argue for their requested sentences, (4) considered the 18 U.S.C. § 3553(a) factors; and (5) adequately explained Davis's sentence. Davis's sentence of 293 months imprisonment was within Davis's advisory Guidelines range, whether or not Davis qualified as a career offender. We are permitted to "apply a presumption of reasonableness" to a sentence within the advisory guideline range." Gall, 128 S. Ct. at 597 (citing Rita v. United States, 551 U.S. 338, __, 127 S. Ct. 2456, 2459 (2007)). We apply the presumption of reasonableness, and Davis fails to rebut this presumption.

Further, "giv[ing] due deference to the district court's decision that the § 3553(a) factors, on a whole, justify" Davis's sentence, Gall, 128 S. Ct. at 597, our review of Davis's sentence reveals no abuse of the district court's considerable discretion and no basis for concluding Davis's within Guidelines sentence is substantively unreasonable.

## III. CONCLUSION

We affirm Davis's sentence and the judgment of the district court.

_____