# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-3691

_____

United States of America

*Plaintiff - Appellee*

v.

Brian Lynch

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: May 13, 2014
Filed: July 7, 2014
[Published]

_____

Before RILEY, Chief Judge, BEAM and SMITH, Circuit Judges.

_____

PER CURIAM.

Brian Lynch pleaded guilty to possession of child pornography in violation of 18 U.S.C. § 2252. Lynch appeals his sentence of 210 months, specifically challenging the five-level upward adjustment for distribution in expectation of a "thing of value," see United States Sentencing Guidelines Manual § 2G2.2(b)(3)(B), because he used file sharing programs to view the pornography. Lynch argues that

while he knew he was using the file-sharing programs Ares and Shareaza, he did not know that others using Ares and Shareaza could access his files remotely, and thus that any "distribution" that happened via these programs was unknowing on his part. In support of this assertion, he directs us to the transcript of his interview during the initial encounter with law enforcement officers as they served the search warrant at his home. Lynch argues that the transcript shows his lack of knowledge of the remote access/sharing function of Ares and Shareaza.

The determination of whether the five-level enhancement for distribution applies is made on a case-by-case basis, with the government bearing the ultimate burden of proof on this issue. United States v. Dolehide, 663 F.3d 343, 347 (8th Cir. 2011). The government may meet this burden with direct evidence (usually in the form of an admission) or by circumstantial evidence such as a defendant's relative computer sophistication. United States v. Durham, 618 F.3d 921, 927-29 (8th Cir. 2010). If the defendant has installed the file sharing program and used it himself, he must show "concrete evidence" of his ignorance as to distribution. Dolehide, 663 F.3d at 347.

At the sentencing hearing, via testimony and the pre-sentence investigation report, the government presented the following circumstantial evidence in support of the enhancement: that undercover officers used a peer-to-peer file sharing network to download images, remotely, from Lynch's computer, several different times in 2013; that Lynch kept folders on his desktop associated with the file sharing programs, in which he kept child pornography images; and that Lynch installed and began using the file-sharing programs to download child pornography since 2007. Furthermore, during the police interview, Lynch assessed his technical computer knowledge as a 5-6 on a scale of 1-10. Lynch's "concrete evidence" of ignorance consists of the initial police interview transcript, where, admittedly, he seemed confused about the concept of how others might access his child pornography files from their remotely located computers. Additionally, the agent who interviewed

Lynch during this interview testified at the sentencing hearing that Lynch said several times during the interview that Lynch didn't think he was sharing anything with anybody else. Finally, the government's forensic computer examiner admitted there was no evidence Lynch emailed or took any other affirmative steps to distribute the child pornography images that he had downloaded.

The district court[1] acknowledged that the five-level increase could not be added simply by virtue of the fact that the Shareaza and Ares programs were on the computer. However, the court made the following findings with regard to indirect evidence of Lynch's knowledge: Lynch was "fairly" computer savvy, including the fact that he had "defragmented" his computer to make it run faster; he had downloaded the programs several years ago (in 2007 and 2008) and had been using them since then; he was the only user of the computer; and the warnings from the software manufacturers detailed the general operation of how shared files worked.

In reviewing the district court's advisory Guidelines calculation, we review the district court's factual findings for clear error and its application of the Guidelines de novo. United States v. Pappas, 715 F.3d 225, 228 (8th Cir. 2013). Given this standard, we cannot say the district court clearly erred in its factual findings, despite Lynch's, at times exculpatory and other times equivocal, answers about his knowledge of file sharing during the police interview. The government presented sufficient circumstantial evidence of Lynch's knowledge of distribution and the district court did not clearly err in determining that Lynch's evidence of ignorance was not "concrete." Nor is the within-Guidelines-range sentence substantively unreasonable. United States v. Huston, 744 F.3d 589, 593 (8th Cir. 2014). Accordingly, we affirm the application of the five-level increase and the resulting sentence.

---

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

SMITH, Circuit Judge, concurring.

I write separately because I reach the same result as the per curiam but for a different reason. The per curiam correctly explains that "[i]f the defendant has installed the file sharing program and used it himself, he must show 'concrete evidence' of his ignorance as to distribution." *See supra* (citing *Dolehide*, 663 F.3d at 347). I would hold that the district court clearly erred in concluding that Lynch failed to provide concrete evidence of his ignorance. However, any error was harmless because the district court would have imposed the same sentence regardless of the five-level distribution enhancement.

Lynch provided ample evidence showing that he thought he was merely *downloading* child pornography rather than *distributing* it to others. *See Durham*, 618 F.3d at 929 (distinguishing between defendant's knowledge of downloading files and uploading them). The evidence upon which he primarily relies to demonstrate his ignorance is an interview transcript of his initial questioning. The per curiam labels his interview responses as "at times exculpatory and other times equivocal." *See supra*. The transcript provides:

> Q: No. But I am saying what files you share with other people that other people can share with you. How do you have that set up?
>
> A: Well, I don't.
>
> &ast; &ast; &ast;
>
> Q: OK. OK. Um, you don't have a certain folder on the computer that you allow it to share?
>
> A: No.

-4-

Q:     OK.

A.     I don't believe I do.

* * *

Q.     You know who all your—

A.     I don't know. I didn't send anything to anybody. I just download it.

* * *

Q.     When was the last date you were file sharing?

A:     But I am not sharing files.

* * *

Q.     Is it turned on right now sharing right now?

A:     I don't know. I mean—

Q:     When you say you don't know. What do you mean?

A:     Well you mean sharing as far as—

Q:     Well, what I mean is that like I say I got files from you over the weekend through Ares.

A:     Un-huh.

Q:     Through Ares. OK.

A:     Sharing the files?

Q:   Right.

A:   The folder is shared?

* * *

Q:   What is the purpose of the Ares program? I mean why do you have the Ares program?

A:   The purpose of it?

Q:   Yeah.

A:   Just to download files.

Q:   Download files. Now how does the Ares program work? Now you, when you set up the Ares program then what happens?

A:   Um, you can view files?

Q:   OK. But then you, but you can also share, you can put files in a folder on the computer for you to share with other people also, correct?

A:   Is that what well I don't know it says shared folder on there.

Q:   OK.

A:   But I don't share. I am not going back and forth and talking to anybody.

Q:   No, no no. But your computer is sharing it with other people. They can. You are downloading stuff from other people.

A:   Um-hum.

Q: But you set it up so other people are downloading files from you also or getting files from you correct?

A: All right.

Q: OK.

A: I assume, yeah.

Q: But how do you know what files you are sharing with the other people?

A: How do I know, well I don't. I mean I just get into that and view what I have on the computer.

* * *

Q: Yeah, so you are downloading from them and you share with them so you can download from them is that correct?

A: Well, I am sure. I didn't know I was sharing. It says shared folder there. So I assume that is what is happening.

Q: OK.

A: But no, all I am doing is just downloading just to see stuff.

* * *

Q: Now, we are looking at your computer so we are going to be able to figure this out pretty quick. Have you ever sent any child pornography other than the peer to peer file sharing; have you ever sent it to anybody else?

A. No.

Q. E-mail or anything like that?

A. No. (Slamming noise)

* * *

Q: And then, at that point you knew you were sharing your files with other people?

A: At that point I thought those were my files. I downloaded and kept.

Q: And then, you knew you were sharing those with other people?

A: I did not know that.

Q: OK.

A: I mean I was uncertain of that you know.

Q: OK, but you had an idea you were sharing, I got them from you?

A: I downloaded.

Q: You know what I am saying?

A: Right.

Q: So at some point you had to know that your files were going to other people also.

A: Right.

Q: So, at what point did you know that?

A: Well, I mean I knew that I was getting them from someone else. I didn't know. So when I was getting them, but I didn't create files I just downloaded them for my own benefit.

Q:    Right.

A:    So I thought you had to create the files and share them back and forth.

Q:    Right, but the files you downloaded other people were getting correct?

A:    Right.

Q:    You knew that part?

A:    That other people were getting?

Q:    Right that other people were getting some of the files that you were downloading yourself. Files that you downloaded to your computer to your shared file.

A:    I was getting other people's files that I downloaded for myself?

Q:    Right, into your share file.

A:    Right.

Q:    And at that point people could get stuff out of—

A:    I understand the process now, yeah. I did not know that.

A computer forensic examiner testified at the sentencing hearing that the folders on Lynch's desktop associated with the file sharing programs were default folders, meaning that the peer-to-peer programs created these folders without Lynch's conscious action. The interviewing officer even testified that he told Lynch on three occasions during the interview that he believed Lynch. The truthfulness of Lynch's interview responses is heightened because the interview was voluntary and occurred

at the first instance in which Lynch knew of the investigation. Furthermore, Lynch had already admitted to possessing child pornography earlier in the interview.

This evidence, especially the interview transcript, reveal a confused defendant who had no idea that he distributed, or made available, child pornography to other users. Nonetheless, the per curiam properly upheld the district court's decision because the district court explicitly stated that it would sentence Lynch to 210 months' imprisonment regardless of any error in Lynch's offense-level calculation. The district court explained that it would vary upward to 210 months' imprisonment, at least in part, because

> [Lynch] has admitted hands-on offending against at least one child on more than one occasion. When he worked at a juvenile facility, he met a 16-year-old with whom he later had sex. He stated that that did not occur until the boy was 18 and had been discharged from the juvenile facility.
>
> As I indicated, he admitted that in 2002 he had oral sex with a child, age 15, 16, both at a park and at his home. This is uncharged criminal conduct and very, very concerning considering the type of work that he did prior to his arrest.

We have stated in the context of a Guidelines-calculation appeal that

> even if [the defendant] were successful on any issues he raises on appeal, the district court made sufficient findings that his final sentence would be unchanged regardless of his guideline calculations. The district court stated that "[i]n the event that the guidelines would fall below 480 months, the Court would depart upward or vary upward to 480 months." Since the district court explicitly stated that it would have imposed a 480 month sentence regardless of the guidelines, any error in applying the guidelines would be harmless. *See United States v. Davis*, 583 F.3d 1081, 1094 (8th Cir. 2009).

*United States v. Pappas*, 715 F.3d 225, 230 (8th Cir. 2013). In other words, "misapplication of the guidelines would be harmless if 'the district court would have imposed the same sentence had it not relied upon the invalid factor or factors.'" *United States v. Henson*, 550 F.3d 739, 740 (8th Cir. 2008) (quoting *Williams v. United States*, 503 U.S. 193, 203 (1992)). Because the miscalculation here was harmless, I agree that we should affirm the district court's decision.

—————————————————